## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN POULSEN<br>520 Third Street, Suite 305<br>San Francisco, CA 94107,<br><br>                       Plaintiff,<br><br>   vs.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br>Washington, DC 20528<br>                      Defendant,<br><br>   and<br><br>MASSACHUSETTS INSTITUTE OF<br>TECHNOLOGY<br>77 Massachusetts Avenue<br>Cambridge, MA 02139,<br>                  Intervenor-Defendant. | Case No.  13-0498(CKK) |

## MEMORANDUM IN SUPPORT OF THE MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S MOTION TO INTERVENE AS DEFENDANT AND ESTABLISH A PROCESS FOR REVIEW AND RELEASE OF DOCUMENTS

The Massachusetts Institute of Technology ("MIT") seeks to intervene in this action to protect two vital interests—the safety of members of the MIT community and the security of its computer networks.[1]  In another case involving the public release of documents similar to (and in some cases, possibly identical to) the documents requested by Plaintiff Kevin Poulsen ("Mr. Poulsen") in this FOIA case, the federal district court for the District of Massachusetts recently found that MIT's interest in protecting the safety of its employees and the security of its

---

[1] Counsel for MIT has conferred with counsel for Mr. Poulsen and the government regarding the relief sought by this motion.  Counsel for the government consents to MIT's intervention in this matter, but has not authorized MIT to make any representation regarding the government's position with regard to the review procedure proposed by MIT.  Counsel for Mr. Poulsen takes no position in advance of this motion, but reserves the right to oppose it after reviewing it.

networks substantially outweighed the public interest in obtaining certain limited information contained in the documents.  *See* Memorandum and Order, *United States v. Swartz*, Crim. No. 11-cr-10260 (D. Mass. May 13, 2013) ("*U.S. v. Swartz* Order"), at 10 (attached as Exhibit A).  In particular, the district court established an orderly process to afford MIT the opportunity to review and redact from the documents information that would reveal the identities of MIT employees or potential vulnerabilities in MIT's networks prior to their public release.  *See* Modified Protective Order, *United States v. Swartz*, Crim. No. 11-cr-10260 (D. Mass. June 3, 2013) ("*U.S. v. Swartz* Modified Protective Order") (attached as Exhibit B).

MIT has reason to believe that documents that may imminently be released by the Department of Homeland Security ("DHS") to Mr. Poulsen in the present case contain similar information that, if released without appropriate redactions, could jeopardize the safety of MIT community members and make its network more vulnerable to cyberattacks.  MIT therefore moves to intervene as a Defendant and asks this Court to establish a process that affords MIT the opportunity to conduct an expeditious pre-release review of any documents that contain information that MIT submitted to DHS or that describes MIT's employees or networks.  This will permit MIT to propose appropriate redactions to DHS before the documents are released to Mr. Poulsen and placed irretrievably into the public domain.

## **BACKGROUND**

Mr. Poulsen seeks disclosure under the Freedom of Information Act ("FOIA") of "any documents held by the U.S. Secret Service concerning Aaron Swartz."  [Dkt. 1]  MIT has strong reason to believe that some of the documents subject to Mr. Poulsen's request contain the personal identifying information of MIT employees and other members of the MIT community, as well as information regarding the security of MIT's computer networks.  Mr. Swartz, the

subject of Mr. Poulsen's FOIA request, was a well-known technological innovator and Internet activist. He was charged in 2011 with several federal crimes related to the automated downloading of several million academic articles from the JSTOR computer database, which he accessed using a computer hidden in a utility closet at MIT that was hard-wired into MIT's network. Mr. Swartz took his own life on January 11, 2013, before his case went to trial, and the charges were subsequently dismissed. Starting from around the time of Mr. Swartz's arrest, the U.S. Secret Service assisted in the investigation of these downloading incidents. MIT provided information and records to members of the Secret Service in connection with this investigation.

Since Mr. Swartz's death, the MIT community has been the subject of harassment and threats in retaliation for its involvement in events relating to Mr. Swartz's prosecution. The most serious of these incidents occurred on February 23, 2013, when the MIT community was in a state of emergency for several hours after an unidentified caller claimed to the Cambridge Police Department that a gunman was on campus targeting the MIT President and other MIT staff in retaliation for Mr. Swartz's death.[2] Although the report turned out to be a hoax, more than 30 MIT and Cambridge Police officers responded and the campus was locked down for several hours. In the months following Mr. Swartz's death, MIT has also endured several severe interruptions of its computer networks, including disruption of its email services and its website, all done expressly in retaliation for Mr. Swartz's death.[3] Individual employees believed to have been involved in the Swartz matter have also received repeated threatening communications.

---

[2] *See* Joanna Kao, "Saturday Report of a Gunman On Campus a Hoax," *The Tech*, Feb. 26, 2013, *available at* http://tech.mit.edu/V133/N7/hoax.html.

[3] *See, e.g.*, Carolyn Y. Johnson, "MIT Website Hacked Again In Tribute to Cyber Activist Aaron Swartz," *The Boston Globe*, Jan. 22, 2013, *available at* http://www.boston.com/metrodesk/2013/01/22/mit-website-hacked-again-tribute-cyber-activist-aaron-swartz/kE8kDBw7bWXyYbZjqtDwjI/story.html.

Despite these very serious threats and security breaches, MIT values openness and has supported the release of information related to the Swartz case.  Indeed, MIT is in the process of releasing its own internal report of its involvement in the Swartz case, along with certain related MIT documents.  MIT strongly believes, however, that all disclosures of information relating to the Swartz case must be done subject to appropriate redactions to remove information that would identify specific MIT employees or community members involved in responding to the Swartz matter or that would reveal vulnerabilities in MIT's computer systems.

In a related case in federal district court in Massachusetts, *United States v. Swartz*, the Swartz estate sought the modification of a protective order governing documents produced in discovery in Swartz's criminal case, so that those documents could be publicly disclosed.  MIT moved to intervene and supported the release of the records, provided appropriate redactions were made.  On May 13, 2013, Judge Nathaniel Gorton of the United States District Court for the District of Massachusetts granted MIT's (and JSTOR's) motion to intervene. *See U.S. v. Swartz* Order at 15.  Judge Gorton recognized that "a great deal of the discovery sought is information originally obtained from MIT and JSTOR in the form of emails." *Id*. at 5.  Judge Gorton agreed with MIT that in light of the very serious threats and harassment that have been directed at MIT and its employees, the public's interest in the disclosure of the identity of individuals is "substantially outweighed by the interest of the government and the victims in shielding their employees from potential retaliation." *Id*. at 10.  Judge Gorton also agreed that the redaction of information revealing network vulnerabilities was appropriate to "protect the victims from further network intrusions." *Id*. at 13.  MIT, JSTOR and the Department of Justice are currently working collaboratively to review and redact these documents in anticipation of

their release, subject to a process established by the district court in Massachusetts.  *See U.S. v. Swartz* Modified Protective Order..

Separately, Mr. Poulsen filed this FOIA action against the U.S. Department of Homeland Security ("DHS") on April 12, 2013, seeking release of "any documents held by the U.S. Secret Service concerning Aaron Swartz."  For the reasons stated above, MIT has strong reason to believe that some of the documents Mr. Poulsen seeks contain personal identifying information of MIT employees and members of the MIT community involved in the Swartz matter, as well as information about MIT's network security.  Indeed, Mr. Poulsen's request may involve some of the very same records at issue in *United States v. Swartz*.  As of the filing of this motion, DHS has not filed an answer to Mr. Poulsen's complaint.  On July 5, 2013, this Court ordered DHS to "promptly release to Plaintiff all responsive documents that it has gathered thus far and [] continue to produce additional responsive documents that it locates on a rolling basis."  Minute Order, *Poulsen v. DHS*, No. 13-cv-0498 (D.D.C. July 5, 2013).  MIT seeks to intervene in this action to protect the personal privacy and safety of the MIT community and the security of MIT's network.

## ARGUMENT

## I.      MIT IS ENTITLED TO INTERVENE AS OF RIGHT

Courts examine four factors to determine whether to grant a motion for intervention as of right under Rule 24(a)(2): (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by the existing parties. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citing *Nova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir.

1998)).  In addition, the D.C. Circuit requires a party seeking to intervene under Rule 24(a)(2) to

demonstrate standing under Article III of the Constitution.  *Id*.  MIT satisfies these criteria.

### A.      MIT's Motion Is Timely

MIT's motion to intervene is timely.  No responsive pleadings have yet been filed.  Less

than two weeks ago, on July 5,  the Court ordered DHS to produce relevant, non-exempt

documents to Mr. Poulsen. In light of that Order, MIT has moved expeditiously to protect its

interests.  No party in this case will be prejudiced by MIT's inclusion at this stage in the case,

nor will any rulings or substantive matters need to be reconsidered as a result of its intervention.

### B.      MIT Has a Substantial Interest in Protecting the Personal Privacy of Its Employees and the Security of Its Network

MIT seeks to intervene in this action to protect the safety and privacy of its employees

and other community members, as well as the security of its computer networks.  This Court has

frequently permitted those who submit information to the government that is later sought during

the course of FOIA litigation to intervene as of right to protect their interests in the information.

*See, e.g.*, *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 125-27 (D.D.C. 2006) (agreeing

with intervenor that documents provided by intervenor to the agency were properly withheld

under Exemption 4); *Appleton v. F.D.A.*, 310 F. Supp. 2d 194, 197  (D.D.C. 2004) (granting drug

manufacturers permission to intervene as of right to protect against disclosure of "confidential

information" contained in New Drug Applications). Furthermore, third party submitters have a

strong privacy interest when their personal information appears in law enforcement files. *See*

*SafeCard Services v. S.E.C.*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding "categorically that,

unless access to the names and addresses of private individuals appearing in files within the

ambit of Exemption 7(C) is necessary to confirm or refute compelling evidence that the agency

is engaged in illegal activity, such information is exempt from disclosure.")

As explained above, MIT has strong reason to believe that documents subject to Mr.

Poulsen's FOIA request may contain the names, job titles, departments, telephone numbers,

email addresses, and other identifying information of many members of the MIT community

who were involved in responding to the activity with which Mr. Swartz was charged.  Given the

recent threats to the MIT community in retaliation for its role in events related to Mr. Swartz's

prosecution, there is a serious and legitimate concern that release of the Secret Service's

documents in unredacted form would jeopardize the safety of MIT employees and would

represent an unwarranted intrusion on their personal privacy.  This information is clearly

protected from disclosure under FOIA Exemptions 6 and 7(C) and the Privacy Act, and MIT has

a strong interest in ensuring the safety and security of these individuals.

The documents subject to Mr. Poulsen's request may also contain candid and confidential

discussions of MIT's computer network security systems, including information that might

identify possible weaknesses in those systems and modifications to be made to the security of

those systems.  Since Mr. Swartz's death, MIT has been the victim of a series of network

intrusions that have resulted in outages of MIT's online services for up to six hours and caused

residual network problems for 24 to 48 hours.  In light of these events,  MIT is concerned that

releasing information about its network vulnerabilities could lead to further, and perhaps more

serious, attacks on its network.  This information is protected from disclosure under FOIA

Exemption 4 and the Trade Secrets Act, and MIT has a substantial interest in ensuring that

confidential information about its network security is not released to the public.

### C.    Absent Intervention, Disposition of This Matter Would Impair MIT's Ability To Protect Its Employees and Its Network

Unless MIT is allowed to intervene in this litigation, the disposition of this litigation

would, as a practical matter, impair or impede MIT's ability to protect its employees' privacy

interests and its network security interests.  Should DHS release documents without appropriate

privacy and security redactions, the interests of MIT and its personnel would be irreversibly

harmed.  Mr. Poulsen has already publicly pledged that he will publish the documents online

upon receiving them.[4]  The release of unredacted or insufficiently redacted documents would

irretrievably harm MIT's interests and undermine the protections already afforded to MIT in

Judge Gorton's May 13, 2013 Order.

### D.      MIT's Interests Are Not Adequately Represented by Any Other Party

DHS cannot adequately represent MIT's interests in this litigation because DHS does not

have the same incentives or access to information as MIT to fully protect its information.  MIT

and its employees would incur the injury from the release of such information, not DHS.

Further, DHS—even if attempting in a good-faith fashion to implement such redactions—may

not be able to ascertain all information in its documents that identifies individual members of the

MIT community, nor would it necessarily know what information about MIT's networks would

jeopardize the security of those networks.   Only MIT can properly evaluate the documents to

determine what information must be redacted to protect the personal privacy interests of its

employees and the security of its networks.

### E.      MIT Has Article III Standing

To establish standing under Article III, a prospective intervenor must show: (1) injury-in-

fact, (2) causation, and (3) redressability. *Fund For Animals*, 322 F.3d at 732-33 (citing *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Courts have long recognized that FOIA

submitters have standing to bring affirmative litigation to prevent the release of information

under the FOIA where the information is exempt from disclosure or would be subject to

---

[4] *See* Kevin Poulsen, "Judge Orders U.S. to Release Aaron Swartz's Secret Service File," *Wired*,
July 8, 2013, *available at* http://www.wired.com/threatlevel/2013/07/swartz-foia/

mandatory withholding under the Privacy Act and the Trade Secrets Act.  *See CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1133 n.1 (D.C. Cir. 1987) ("'Reverse FOIA' actions are now a common species of FOIA litigation."); *Cortez III Serv. Corp. v. NASA*, 921 F. Supp. 8, 11 (D.D.C. 1996) (holding that in FOIA actions "courts have jurisdiction to hear complaints brought by parties claiming that an agency decision to release information adversely affects them").  A favorable ruling from this Court would redress any injury to MIT's interests by ensuring that MIT has an opportunity to object to the release of any information that would harm its employees' privacy interests or its interest in protecting its network.

## II.    PERMISSIVE INTERVENTION IS APPROPRIATE

In the alternative, the Court should grant MIT permission to intervene under Rule 24(b)(1)(B), which gives the Court discretion to join any proposed intervenor that "has a claim or defense that shares with the main action a question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  As discussed above, MIT's motion is timely. Further, any claims or counterclaims that MIT could bring to prevent the disclosure of individuals' identities and network security under FOIA clearly involves questions of law and fact in common with the claims and defenses likely to be asserted by DHS and Mr. Poulsen.  And, because DHS has not yet filed a responsive pleading, intervention at this point in the proceedings will not delay or prejudice any party.  In contrast, if MIT were not permitted to intervene before the release of documents, it would be prejudiced by not being able to advocate for and protect its interests.

## III.    THIS COURT SHOULD PERMIT MIT TO CONDUCT AN EXPEDITIOUS REVIEW OF DOCUMENTS BEFORE THEY ARE PUBLICLY RELEASED

MIT seeks intervention in this case to protect the safety of members of the MIT community and the security of MIT computer networks.  However, MIT cannot protect those interests if it does not have an advance opportunity to review the documents DHS intends to

release so that it can suggest appropriate redactions.  Mr. Poulsen has already pledged to make

the documents publicly available upon receipt.  There can be no proverbial closing of the barn

door after the horse has escaped.

MIT therefore moves the Court to establish an orderly and expeditious process by which

MIT can review, in advance of disclosure to Mr. Poulsen, any documents that (1) originated from

MIT, (2) discuss information obtained from MIT, or (3) contain information regarding MIT

employees or networks.  MIT does not oppose DHS's disclosure to Mr. Poulsen of all responsive

records (subject only to limited redaction) and does not seek to unreasonably delay these

proceedings.  Instead, MIT asks for a short period—for example, five business days—to review

and propose redactions with respect to any documents the government intends to disclose to Mr.

Poulsen.  MIT's interest begins and ends with ensuring the appropriate redaction of personal

information regarding MIT employees and information regarding vulnerabilities in MIT's

computer networks.  Such redactions would be without prejudice to plaintiff subsequently

challenging the appropriateness of those redactions under applicable FOIA exemptions, the

Privacy Act, or the Trade Secrets Act.[5]  In the event that the government objects to any

redactions proposed by MIT during the limited review period, MIT would also have the

opportunity to move for appropriate relief in this Court before the disputed information is

released.

Such a process is similar to the kind of pre-disclosure review typically afforded in the

FOIA context to third-party submitters of information to the government.  DHS's own

---

[5] The Court need not decide at this stage whether the requested redactions are appropriate under
Exemptions 4, 6, or 7(C), although MIT believes they are.  *See Appleton*, 310 F. Supp. 2d at 197,
n.6 (declining to ascertain at the intervention stage of the proceedings "whether the information
contained in the applicants' [New Drug Applications] in fact qualifies as trade secrets or
confidential information" under Exemption 4).  Mr. Poulsen would have the opportunity to
challenge any such redactions upon receipt of the records and a Vaughn index.

regulations recognize the need to afford third parties the opportunity to object to disclosure in similar circumstances: when DHS has obtained "business information, directly or indirectly" from an entity and there is "reason to believe that the information may be protected from disclosure under Exemption 4," DHS is required to provide those records to the submitter prior to release to a FOIA requester so that the submitter may raise objections or suggest redactions.  6 C.F.R. §§ 5.8(b)(2) & (e)(2) (2003).  Third-party review is not limited to raising objections based on Exemption 4; submitters may "specify . . . all grounds for withholding any portion of the information under any exemption of the FOIA." *Id.* § 5.8(f).  These regulations exist precisely because the government may not be able to ascertain on its own how the release of certain information could harm third parties.[6]  MIT's interest in protecting the safety and privacy of its employees and the security of its networks is, if anything, stronger here than in the typical Exemption 4 case, and MIT is indisputably better-equipped than DHS to determine what responsive material would reveal the identities of MIT employees or MIT's network vulnerabilities.

Further, in Administrative Procedure Act challenges to agency decisions regarding the release of FOIA-requested materials (so-called "reverse" FOIA cases), judges of this Court have found that an agency's consultation with the submitter of the responsive material and consideration of the submitter's objections to disclosure weigh in favor of finding that the agency's response to the FOIA request was not arbitrary or capricious.  *See, e.g., GS Markets*

---

[6] MIT recognizes that some documents to be released by DHS may be internal government documents and not documents MIT submitted.  However, MIT should be granted this review whether or not the document was provided to the government by MIT, or simply discusses or contains  information provided by MIT.  *See Gulf & Western Indus., Inc. v. United States*, 615 F.2d 527, 529-30 (D.C. Cir. 1979) (concluding that the agency must redact under Exemption 4 portions of its own report from which information supplied by the plaintiff could be "extrapolated").

*Fund, LLC v. Dep't of the Treasury*, 407 F. Supp. 2d 21, 25 (D.D.C. 2005) (observing that the agency "carefully considered the nature of the FOIA requests and the basis for the plaintiff's objections"); *Gen. Dynamics Corp. v. Dep't of Air Force*, 822 F. Supp. 804, 807 (D.D.C. 1992) (noting that the "government considered and understood" the submitter's arguments), *vacated as moot*, No. 92-5186 (D.C. Cir. Sept. 23 1993).   Consultation between an agency responding to a FOIA request and third parties with an interest the FOIA-requested materials is not uncommon, and such consultation between MIT and DHS now will assist the efficient resolution of Mr. Poulsen's requests while protecting MIT.

The unique circumstances giving rise to this case and the threats already endured by members of the MIT community merit affording MIT the ability to conduct a brief but thorough pre-disclosure review.   Parties and intervenors to *United States v. Swartz* are currently conducting a similar third-party review without incident.   Drawing on the process ordered by Judge Gorton, MIT proposes the following procedure: before DHS makes a disclosure to Mr. Paulsen of any documents responsive to Plaintiff's FOIA request that originated from MIT, discuss information obtained from MIT, or contain information regarding MIT employees or networks (hereinafter "MIT-Related Documents"), (1) DHS shall, on a rolling basis, provide to counsel for MIT copies of those MIT-Related Documents that it has designated for disclosure to Mr. Poulsen in the form DHS is prepared to disclose them to Mr. Poulsen; (2) upon receipt of such MIT-Related Documents from DHS, MIT will have five business days to review and propose to DHS additional redactions (if any) to remove references to network vulnerabilities and information likely to identify MIT employees or community members; and (3) DHS will then, within five business days, promptly disclose such MIT-Related Documents to Mr. Poulsen in a manner that implements any redactions proposed by MIT.   In the unlikely event of a

disagreement between DHS and MIT regarding the appropriateness of any of MIT's redactions,

MIT will then have five business days to move for appropriate relief in this Court prior to any

public release of that disputed information, and DHS will not release such disputed information

until the Court has an opportunity to rule.  If MIT does not move for such relief within such time,

DHS will then release the documents in question to Mr. Poulsen with the redactions to which

DHS agrees at the conclusion of that five-day period.

<u>**CONCLUSION**</u>

   Based on the foregoing, this Court should grant MIT's motion for intervention and enter

an Order protecting MIT's substantial interests in these documents by providing MIT an

opportunity to conduct an expeditious review of documents prior to their release.

<br>

      By:   /s/ Patrick J. Carome
          PATRICK J. CAROME (DC Bar No. 385676)
          LAURA M. HUSSAIN (DC Bar No. 988151)
          Wilmer Cutler Pickering Hale and Dorr LLP
          1875 Pennsylvania Ave., N.W.
          Washington, D.C. 20006
          Tel.: (202) 663-6000
          Fax: (202) 663-6363
          Patrick.Carome@wilmerhale.com
          *Counsel for Movant-Intervenor*
          *Massachusetts Institute of Technology*

Dated:  July 18, 2013