## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**KEVIN POULSEN**        :
520 Third Street, Suite 305    :
San Francisco, CA 94107     :
            :
      Plaintiff,   :
            :  Case No: 13-cv-00498 (CKK)
            :
     v.       :
            :
**DEPARTMENT OF HOMELAND SECURITY** :
Washington, DC 20258     :
            :
      Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## ANSWER OF JSTOR

   Proposed Intervenor Ithaka Harbors, Inc. d/b/a JSTOR ("JSTOR") answers the complaint as follows:

   1.  This paragraph contains Plaintiff's legal conclusions to which no response is required.

   2.  This paragraph contains Plaintiff's legal conclusions to which no response is required.

   3.  JSTOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

   4.  JSTOR admits that DHS is a department of the Executive Branch of the government of the United States and an agency within the meaning of 5 U.S.C. § 522(f) and that the United States Secret Service is a component of DHS.

5.      JSTOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

6.      JSTOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7.      JSTOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.      JSTOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.  Further, this paragraph contains Plaintiff's legal conclusions to which no response is required.

9.      JSTOR repeats its responses to paragraphs 1 through 8 of Plaintiff's complaint.

10.     This paragraph contains Plaintiff's legal conclusions to which no response is required.

11.     This paragraph contains Plaintiff's legal conclusions to which no response is required.

12.     This paragraph contains Plaintiff's legal conclusions to which no response is required.

The remaining paragraph constitutes Plaintiff's request for relief for which no response is required.  JSTOR denies each and every allegation made in the complaint not expressly admitted herein.

## **Affirmative Defenses**

Consistent with the opinion and order of the Court in *U.S. v. Swartz*, Crim. No. 11-cr-10260-NMG (D. Mass), attached hereto as Exhibits 1 and 2, any documents that Defendant

Department of Homeland Security releases pursuant to the Freedom of Information Act should be produced only after JSTOR is permitted to review and redact any JSTOR-related documents.

**<u>Prayer for Relief</u>**

JSTOR respectfully requests that the Court enter an order that prior to any release of documents referencing JSTOR or any of its personnel, Defendant shall provide JSTOR with a copy of those documents, and shall allow JSTOR to make redactions consistent with the opinion and order of the Court in *U.S. v. Swartz*, Crim. No. 11-cr-10260-NMG (D. Mass), and that the Court grant such other relief as it may deem appropriate.

Dated: July 19, 2013                                  Respectfully submitted,

                                                                    */s/ Timothy K. Beeken*
                                                                    By: Timothy K. Beeken [Member of D.D.C.,
                                                                         not of D.C. Bar]
                                                                         Bruce E. Yannett [D.C. Bar # 416306]

<u>Of Counsel:</u>                                   DEBEVOISE & PLIMPTON LLP
                                                                    919 Third Avenue
Jeremy Feigelson                                 New York, New York 10022
Jared I. Kagan                                       (212) 909-6000
DEBEVOISE & PLIMPTON LLP         tkbeeken@debevoise.com
919 Third Avenue                               beyannett@debevoise.com
New York, New York 10022
(212) 909-6000
jfeigels@debevoise.com
jikagan@debevoise.com

# EXHIBIT 1

**United States District Court**
**District of Massachusetts**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>v.                        )<br><br>AARON SWARTZ,               )<br><br>        Defendant.        ) | Criminal No.<br>11-10260-NMG |

**MEMORANDUM & ORDER**

GORTON, J.

The government dismissed all charges against defendant in this case shortly after his demise in January, 2013.  The instant dispute concerns discovery materials produced while the criminal case against defendant was ongoing and which are subject to a protective order.  Defendant's estate now moves to modify the protective order to permit the disclosure to Congress and the public of certain discovery materials, subject to specific limitations.  The government, along with the proposed intervenors, agree with the estate's request except to the extent that the estate seeks disclosure of identifying information and details revealing the deficiencies of the victims' computer networks.

I.  **Background**

Defendant Aaron Swartz was indicted in July, 2011 for allegedly attempting to download all of the electronically

archived materials maintained by JSTOR while accessing them through a computer network operated by the Massachusetts Institute of Technology ("MIT").

In November, 2011, the Court entered a blanket protective order ("the Protective Order") generally barring defendant from disclosing any documents, files or records discoverable under Fed. R. Crim. P. 16 to anyone other than potential witnesses, absent further court order. The Protective Order identified JSTOR and MIT as victims of the alleged crimes, specifically cited concerns that such discovery materials included potentially sensitive, confidential and proprietary communications belonging to them and required defendant to destroy all copies of discovery materials at the conclusion of the criminal case.

Defendant's death occurred before this Court held a suppression hearing, decided dispositive motions or conducted the trial. Although the government dismissed all charges against defendant soon thereafter, media coverage of the government's investigation into, and ultimate prosecution of, Mr. Swartz has escalated since the time of his death.

In late January, 2013, the House Committee on Oversight and Government Reform ("the House Committee") of the United States Congress announced its intention to investigate the prosecution of Mr. Swartz and to review one of the statutes under which he was charged. By letter dated February 4, 2013, the Chairman and

Ranking Member of the House Committee contacted Keker & Van Nest LLP, formerly counsel to Mr. Swartz and who now purport to represent his estate, to request copies of documents provided to Mr. Swartz during his criminal case.[1]  Shortly thereafter, local counsel for the estate had discussions with the government about modification of the Protective Order.

At approximately the same time Congress and the media began to scrutinize Mr. Swartz's prosecution, employees of the government, MIT and JSTOR were subjected to a variety of threats and harassing incidents by individuals purportedly retaliating in the name of Mr. Swartz.  Both the government and MIT suffered intrusions into their respective computer networks, resulting in outages to MIT's email system and a compromise of the website of the United States Sentencing Commission.  Employees of the United States Attorney's Office and MIT who were in some way associated with Mr. Swartz's case received threatening communications.

Most troubling, in February, 2013 an unidentified individual called MIT and reported that a gunman in armor was on campus seeking to harm the President of MIT in retaliation for its involvement in the events surrounding Mr. Swartz's death.  Although the report turned out to be a hoax, more than 30

---

[1] The government and MIT question whether counsel for the estate has standing to seek such modification now that the case against their client has been dismissed, although neither cites any authority.  The Court assumes without deciding that they do.

Cambridge and MIT police officers responded to the call and MIT's campus was locked down for several hours while law enforcement searched for evidence of a gunman.

During that same period, the government, MIT and JSTOR began cooperating directly with the Congressional investigation.  In particular, both MIT and JSTOR have produced documents in response to that inquiry with certain identifying information redacted in order to protect the privacy and safety of the individuals involved.

Counsel for the estate has moved to modify the Protective Order and served notice of its motion upon JSTOR and MIT.  The government timely opposed the motion, in part.  Victims JSTOR and MIT timely moved to intervene, with the assent of the parties, and oppose, in part, modification of the Protective Order.

## II.  **Motions to Intervene in Order to Oppose Modification**

As an initial matter, JSTOR and MIT have moved to intervene at the invitation of defendant's estate and with the assent of the government.  Several courts have recognized this kind of limited intervention as a proper device by which third parties may assert their interest in protecting confidential materials obtained during criminal proceedings. See, e.g. Harrelson v. United States, 967 F. Supp. 909, 913 (W.D. Tex. 1997) (noting third-party entities may request intervention to protect "privileged or confidential information" obtained from them and

-4-

citing cases). Because a great deal of the discovery sought is information originally obtained from MIT and JSTOR in the form of emails and the parties agree that intervention is appropriate, their motions to intervene will be allowed.

### III. **Motion to Modify the Protective Order**

The government, the estate and the intervenors agree that certain modifications to the Protective Order are appropriate to permit the production of discovery materials to Congress. In particular, the parties consent to production of most discovery materials, with the exception of grand jury transcripts, immunity orders, criminal history information, the downloaded JSTOR articles and associated computer code. They also agree that certain personal information contained within those documents, such as Social Security numbers and contact information, as well as the identity of four witnesses questioned by law enforcement, should be redacted from any materials produced. In sum, notwithstanding the restrictive language contained within the Protective Order, the parties and intervenors agree in general terms that the Protective Order should be modified to permit counsel for the estate (and formerly defendant's counsel) to disclose much of the discovery materials to Congress and to the public.

The dispute centers around whether the names and identifying information of JSTOR, MIT and law enforcement personnel should be

redacted from the materials produced.  With the exception of the
two Assistant United States Attorneys who prosecuted the case,
the government's expert, and three law enforcement officers, the
government, MIT and JSTOR seek redaction of the names and any
identifying information for all current and former JSTOR and MIT
employees and other law enforcement personnel for their own
protection.  The estate, meanwhile, asserts that such identifying
information is important to understanding the investigation and
prosecution of Mr. Swartz and must be disclosed.

MIT also opposes disclosure of any materials containing
information related to the vulnerabilities of its computer
network without having an opportunity to review and redact those
documents.

### A.    Protective Orders under Fed. R. Crim. P. 16

Fed. R. Crim. P. 16(d) permits a court to enter a protective
order in a criminal case for "good cause." United States v.
Bulger, 283 F.R.D. 46, 52 (D. Mass. 2012).  The First Circuit has
not articulated a definitive standard for the modification or
vacation of a protective order in a criminal case, although
courts undeniably retain that power as part of their inherent
authority over the discovery process. Id. at 53.  The issue was,
however, recently analyzed in an exhaustive opinion by the Bulger
court and this Court agrees that it is appropriate to analyze the
"good cause" requirement under the criminal rules in light of

-6-

precedent analyzing protective orders entered in civil cases. See
id. at 52-53 (analogizing to civil discovery orders and citing
Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st
Cir. 1988)).

The task of determining whether and how to modify a
protective order under Fed. R. Crim. P. 16(d) requires a district
court to "weigh[] and balanc[e] a number of relevant factors."
Id. at 53.  Those factors include, inter alia, any change in
circumstances necessitating modification, a party's reliance upon
the protective order when it produced discovery materials and the
privacy interests of third parties. See id. at 53-55 (discussing
relevant factors).

The interests of third parties bear particular emphasis
because much of the discovery materials sought were produced by
victims (MIT and JSTOR) and the information sought to be
disclosed involves the identities of their representatives. See
id. at 55; United States v. Salemme, 985 F. Supp. 193, 197 (D.
Mass. 1997) ("The privacy interests of third parties may weigh
heavily in deciding issues of impoundment."); see also United
States v. Kravetz, 706 F.3d 47, 61 (1st Cir. 2013) (noting
privacy rights of third parties can limit public's presumptive
right of access to judicial records).  This is particularly true
where disclosure of the materials in question raise safety
concerns. See Bulger, 283 F.R.D. at 55-56 (noting that advisory

-7-

committee notes to Rule 16(d) contemplated need to protect material where "there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed").

### B.   Presumption of Public Access

In support of its motion seeking modification of the discovery order, the estate emphasizes the public's heightened interest Mr. Swartz's prosecution and invokes the presumptive right of the public to access criminal proceedings as a reason favoring disclosure of the contested materials.   In order to weigh effectively the interests at stake the Court will first address whether that right attaches to the materials at bar.

The public's presumptive right of access derives from both the First Amendment and common law and ensures access to criminal trials, pretrial proceedings and materials on which a court relies when determining the litigants' substantive rights. In re Providence Journal Co., Inc., 293 F.3d 1, 9-10 (1st Cir. 2002).   No trial was held in this case, however, nor was there an evidentiary hearing or an opinion on the merits.   Rather, the estate seeks access to discovery materials that were, in large part, subject to a protective order, produced in response to subpoenas and not incorporated into judicial records.

The First Circuit recently found that "public access has little positive role in the criminal discovery process" and

suggested that there is no presumption of public access even to civil discovery materials that are

> neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers.

United States v. Kravetz, 706 F.3d 47, 54-55 (1st Cir. 2013). The Kravetz court specifically determined that documents produced pursuant to a pre-trial subpoena duces tecum "are not entitled to a presumption of access." Id. at 53.  While it did not decide, specifically, whether discovery materials produced pursuant to grand jury subpoenas are also outside the reach of the presumption of public access, there is little reason to think that the Kravetz decision does not also apply to such materials considering that confidentiality attaches to all aspects of grand jury proceedings as a matter of law.  See, e.g. In re Grand Jury Subpoena, 662 F.3d 65, 67 (1st Cir. 2011) (using pseudonyms in place of the names of subpoenaed entities in order to "preserve the confidentiality of grand jury proceedings" established by Fed. R. Crim. P. 6(e)).

Accordingly, the Court concludes that no presumptive right of access extends to most of the discovery materials at issue and will therefore afford the claimed interest of the estate little deference.

### C.    Redaction of Identifying Information

The Court turns to the "good cause" inquiry.  After weighing
all of the interests at stake, it concludes that the estate's
interest in disclosing the identity of individuals named in the
production, as it relates to enhancing the public's understanding
of the investigation and prosecution of Mr. Swartz, is
substantially outweighed by the interest of the government and
the victims in shielding their employees from potential
retaliation.

The government, MIT and JSTOR have each adduced credible
evidence that individuals connected to the investigation have
suffered incidents of harassment and retaliation.  Even
individuals only superficially connected to the investigation,
including a relative of one of the prosecuting attorneys, have
received threatening communications.  Those identified threats
demonstrate a strong risk that any individuals newly named in the
discovery materials face potential reprisals and that their
interests strongly support redaction of such identifying
information. See Bulger, 283 F.R.D. at 56 (declining to permit
disclosure of discovery materials implicating witness safety);
Salemme, 985 F. Supp. at 197.

In contrast, the estate has not identified specific
documents for which redaction of identifying information will
undercut the public's understanding of the investigation and

-10-

prosecution of Mr. Swartz.  While it is possible that removal of such information will render some documents more difficult to understand for lack of knowledge of "who" is speaking, that is a minor concern considering that the content within those documents will be largely unaltered.  Further, the extent to which redaction impairs the Congressional investigation may be rectified with assistance from the government, MIT or JSTOR, any of which can address such concerns on a case-by-case basis.

The estate also argues that the Protective Order should be modified because the government would have had to disclose identifying information at trial and therefore could not have relied upon the Order.  That argument asks too much.  The parties' compromise already reflects that inevitability because the government has agreed not to seek redaction of six of its principal witnesses.  Beyond that, the Court will not speculate as to who would have been identified during the course of trial.  Nor can the Court guess how the government would have proceeded at trial if its prospective witnesses faced threats of harassment and retaliation, or how it would address the concerns of MIT and JSTOR regarding discussion of the vulnerabilities of their networks.  The Protective Order anticipated the latter concerns, and in that regard, the victims clearly continued to rely upon it.

In the alternative, the estate contends that any documents

referenced in the parties' briefing are part of the judicial
record and the identifying information therein should be
disclosed.  Although the estate rightly points out that the
presumption of public access may attach to those documents
because, unlike discovery materials, motions to suppress and
dismiss are "judicial records," redaction of even judicial
records may be appropriate when third-party privacy interests are
jeopardized. See Kravetz, 706 F.3d at 62-63.  Further, the
exhibits attached in support of defendant's motion to suppress
and to dismiss were filed under seal.  The fact that one of those
motions quoted from sealed documents, identified certain
individuals and was later publicized by a student newspaper, does
not justify further dissemination of that information in light of
the credible threat of retaliation identified by the government
and the intervenors.

### D.   Redaction of Information Relating to Network Security

Separate and apart from defendant's request to disclose
identifying information, MIT seeks an opportunity to review
discovery materials in the estate's possession which relate to
the weaknesses of MIT's computer network.  Upon balancing the
interests at stake, the Court concludes that both MIT and JSTOR
should have an opportunity to review and redact discovery
materials that invoke those concerns prior to their disclosure.

Both victims were entitled to rely on the Protective Order

-12-

for protection of such materials.  As discussed supra, MIT and
JSTOR produced discovery materials subject to subpoena and the
Protective Order and did so solely for the purpose of assisting
Mr. Swartz with his defense.  The Court contemplated the specific
concern at issue when it entered the Protective Order, noting
that the discovery materials included records obtained from JSTOR
and MIT that discussed "the victims' computer systems and
security measures."

Redaction of this kind of information perhaps runs a greater
risk of rendering aspects of the government's investigation less
clear to the public because it will result in the redaction of
what was said, rather than merely who said it.  Even so, the
redaction is justified in order to protect the victims from
further network intrusions.  Mr. Swartz, at the very least, used
the computer networks of both MIT and JSTOR in an unapproved
manner and they were justifiably concerned that their internal
communications analyzing his intrusion remain confidential.
Since Mr. Swartz's death, MIT, in particular, has suffered
additional network breaches, suggesting that the implementation
of a Protective Order was justified.  The fact that these
documents raise security concerns for third parties similarly
weighs in favor of redaction. See Kravetz, 706 F.3d at 62-63
(privacy concerns); Bulger, 283 F.R.D. at 55-56 (contemplating
safety concerns).  Finally, the fact that both MIT and JSTOR are

-13-

cooperating with the Congressional inquiry into Mr. Swartz's prosecution suggests that, to the extent such redactions interfere with the comprehension of any documents, each can address those problems with the House Committee on a case-by-case basis.

In sum, although the public has expressed a strong interest in the investigation and prosecution of Mr. Swartz, that fact does not bestow upon his estate the right to disclose criminal discovery materials produced to his counsel solely for the purpose of preparing for trial. This is particularly true where disclosure may subject third parties to threats and harassment, and where those same parties have already expressed their intention to make public the records sought with appropriate redaction. See Bulger, 283 F.R.D. 46 at 55 (describing court's role as weighing need for modification against need for protection while factoring in "availability of alternatives"). Nevertheless, in light of the compromise reached by all parties, the Court will allow the estate's motion, in part, and enable it to disclose discovery materials in its possession after redaction of the identity of individuals and sensitive network information.

-14-

## ORDER

In accordance with the foregoing,

1)    the motions to intervene by the Massachusetts Institute
      of Technology (Docket No. 113) and JSTOR (Docket No.
      116) for the purpose of partially opposing the motion
      to modify the protective order are **ALLOWED,**

2)    the motion of defendant's estate to modify the
      protective order (Docket No. 109) is, with respect to
      the aspects upon which the parties and intervenors
      agree, **ALLOWED,** but, with respect to disclosure of
      identifying and network information, **DENIED,**

3)    the estate shall afford the intervenors an opportunity
      to review and redact all documents produced in
      discovery to address identifying and sensitive network
      information, and

4)    the parties and intervenors shall submit a joint
      proposed order for modification of the Protective Order
      consistent with this opinion on or before May 27, 2013.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated May 13 , 2013

-15-

EXHIBIT 2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    :
                                             :
                               Plaintiff,    :
                                             :
                                             :
                                             :        Crim. No 11-CR-10260-NMG
               v.                            :
                                             :        [~~PROPOSED~~] ORDER
AARON SWARTZ,                                :
                                             :
                               Defendant.    :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS the Estate of defendant Aaron Swartz ("the Estate") has moved to

modify the protective order (Dkt. 28) in this case, a copy of which is appended hereto at

Tab A for reference ("Protective Order"); and

WHEREAS non-parties Ithaka Harbors, Inc. d/b/a JSTOR ("JSTOR") and the

Massachusetts Institute of Technology ("MIT") have been granted leave to intervene on

the Estate's motion to modify the Protective Order, and the Estate and the United States

have consented to the intervention; and

WHEREAS the Estate, the United States, JSTOR and MIT agree that the

Protective Order should be modified to allow for public access to discovery materials in

this case; and

WHEREAS on May 13, 2013, the Court issued a Memorandum & Order

concerning the Estate's motion, granting the motions of JSTOR and MIT to intervene,

resolving open issues as to the scope of redactions, and ordering the Estate, the United

States and the intervenors to submit a joint proposed order for modification of the

Protective Order (the "Modification") consistent with that Memorandum & Order, which

they submitted on May 31, 2013;

IT IS HEREBY ORDERED THAT:

1.     The Protective Order is hereby modified, and discovery materials should be
       readied for public release, as follows:

       a.     For purposes of this Modification, the term "Discovery Documents" shall
              mean documents, electronic files, records and other materials the United
              States produced to the defendant Aaron Swartz, including the defendant's
              counsel (the "defendant") in this matter pursuant to Fed. R. Crim. P. 16
              and this Court's Local Rules 116.1 and 116.2. The term includes all
              documents subject to the Protective Order. The term "Discovery
              Documents" shall also include any documents, electronic files, records
              and materials produced by JSTOR or MIT to the defendant pursuant to
              Fed. R. Crim. P. 17 or on any other basis.

       b.     Within five business days of this Order, the Estate and the counsel for the
              Estate shall deliver to the U.S. Attorney's Office in Boston ("USAO") the
              originals and all copies of all Discovery Documents, including all
              Discovery Documents in the possession of the Estate, counsel for the
              Estate, and/or the "defense" as that term is defined in ¶1 of the Protective
              Order, except for: (i) those Discovery Documents that have been destroyed
              pursuant to paragraph 2 of this Modification; and (ii) 2 sets of the
              Discovery Documents, which may be retained to perform the review
              process set forth in subparagraph 1(i) of this Modification.

       c.     The USAO shall remove from the Discovery Documents provided all
              documents that the counsel for the Estate and the USAO previously agreed
              should not be publicly disclosed, including without limitation (a)
              transcripts of grand jury testimony, (b) materials concerning immunity for
              grand jury witnesses, (c) the articles downloaded by Mr. Swartz from the
              JSTOR digital library (content and metadata), (d) any computer code that
              was used or intended to be used to download articles from JSTOR, and (e)
              criminal history information. Attached at Tab B is a more detailed
              description of the discovery materials not to be disclosed.

       d.     The USAO then may redact the remaining Discovery Documents to its
              reasonable satisfaction in order to remove the names of government
              employees, witnesses and potential witnesses (not otherwise employed by

JSTOR or MIT) and other information reasonably likely to facilitate the identification of such individuals, except for the names of the two Assistant United States Attorneys, three members of law enforcement and one expert witness that the USAO has previously agreed to leave unredacted. Redactions may include, but need not be limited to, names, email prefixes, personal e-mail suffixes, telephone numbers, home and work addresses, conference call numbers, Social Security numbers, birthdates, job titles, resumes, curriculum vitae, personnel files, and departments.

e.   The USAO then will provide the redacted set of Discovery Documents to MIT, at which time MIT may further redact the documents to its reasonable satisfaction in order to remove any references to possible network vulnerabilities and to the names of MIT employees, students, or other individuals affiliated with the Institute, and any other information reasonably likely to facilitate the identification of such individuals. Redactions may include, but need not be limited to, names, email prefixes, personal e-mail suffixes, telephone numbers, home and work addresses, conference call numbers, Social Security numbers, birthdates, job titles, resumes, curriculum vitae, personnel files, and departments.

f.   MIT then will provide the redacted set of Discovery Documents to JSTOR, at which time JSTOR may further redact the documents on the same terms set forth in the preceding subparagraph as to MIT.

g.   JSTOR then will provide the redacted set of Discovery Documents to the USAO for a final review, after which the USAO will distribute copies of the fully redacted set of Discovery Documents to the Estate, MIT and JSTOR. The USAO will affix new Bates numbering to this redacted set of Discovery Documents before distributing it.

h.   The USAO, MIT and JSTOR are directed to cooperate to generate the redacted set of Discovery Documents within 60 days of the USAO's receipt of the Discovery Documents from counsel for the Estate. If the 60 day period cannot be met, the parties affected by this document may seek leave of the Court to extend the period of time to complete the redaction process, which leave shall be granted for good cause shown.

i.   Upon receipt of the redacted set of Discovery Documents pursuant to sub-paragraph 1(g), above, the Estate shall have 14 days to review the proposed redactions and to serve the USAO, MIT and JSTOR with any written objections to the nature or extent of the redactions. Within 7 days following service of any such objections, the parties shall confer and attempt to resolve any disagreements. If the parties are unable to reach

3

agreement concerning any disputed redactions, the Estate may file a motion seeking resolution by the Court.

j.    Upon final agreement – or judicial resolution – concerning the scope of the redactions and completion of the redaction process (hereafter, "the Completion Date"), the resulting final redacted set of Discovery Documents (hereafter, "the Publicly Available Set of Documents") shall be open to public inspection or distribution.

2.    It is further ordered that:

a.    Within five business days of this Order, the Estate, counsel for the Estate, and the "defense" as that term is defined in ¶1 of the Protective Order, shall destroy all copies of the Discovery Documents not otherwise delivered to the USAO or permitted to be retained pursuant to ¶1(b) of this Modification, and shall certify to the Court that such destruction has occurred.

b.    If the Estate, counsel for the Estate or a member of the "defense" as that term is defined in ¶1 of the Protective Order has distributed any copies of the Discovery Documents to any person, or is otherwise aware that any person has possession of the Discovery Documents other than the United States, MIT or JSTOR, then, within five business days of this Order, the Estate, the counsel for the Estate or that member of the "defense" shall cause the destruction of those copies and certify to the Court that all such copies of the Discovery Documents have been destroyed, or, if the reasonable efforts of the counsel for the Estate do not result in causing the destruction of those copies, shall inform the Court of those individuals or entities who have copies of Discovery Documents that have not been destroyed and provide to the Court (with copies to MIT, JSTOR and the USAO) the signed copy of the protective order acknowledging receipt of the Protective Order and the agreement to be bound by it (as provided in ¶4 of the Protective Order).

c.    Within 5 business days of the Completion Date, the Estate, counsel for the Estate, and the "defense" as that term is defined in ¶1 of the Protective Order, shall destroy the 2 sets of the Discovery Documents whose retention is permitted by subparagraph 1(b) of this Modification, and shall certify to the Court that such destruction has occurred.

3.    The Estate, counsel for the Estate, a member of the "defense" as that term is defined in paragraph 1 of the Protective Order, and/or any other person who they permitted to review or receive copies of the Discovery Documents shall not disclose any information contained in, or derived from, any material redacted in

the Publicly Available Set of Documents. For clarification, this prohibition includes but is not limited to, any public use, discussion, description or release of the information that is redacted in the Publicly Available Set of Documents.

4.      No person who obtained access to the Discovery Documents in their unredacted form during the pendency of this criminal case (11-cr-10260-NMG), or thereafter, shall disclose any information contained in, or derived from, any material redacted in the Publicly Available Set of Documents. For clarification, this prohibition includes but is not limited to, any public use, discussion, description or release of the information that is redacted in the Publicly Available Set of Documents. For further clarification, nothing in this Order shall preclude JSTOR or MIT from voluntarily releasing documents from their own files.

5.      If the USAO, MIT or JSTOR publicly releases its own documents with fewer redactions than will be contained in the Publicly Available Documents, nothing in Paragraphs 3 or 4 of this Modification prohibits anyone from discussing or commenting on the newly disclosed information.

SO ORDERED:

_Nathaniel M. Gorton_
Hon.  Nathaniel M. Gorton

6/3/13
Dated

# TAB A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 11-10260-NMG** |
| | ) | |
| AARON SWARTZ, | ) | |
| Defendant | ) | |

## <u>PROTECTIVE ORDER</u>

Whereas the Indictment in this case alleges that JSTOR and the Massachusetts Institute of Technology ("MIT") are victims of conduct committed by Defendant Aaron Swartz, and the materials discoverable in this case under Fed. R. Crim. P. 16 and L. R. 116.1-116.2 contain potentially sensitive, confidential and proprietary communications, documents, and records obtained from JSTOR and MIT, including discussion of the victims' computer systems and security measures,

The Court finds, without objection, good cause for entry of this Protective Order pursuant to Fed. R. Crim. P. 16(d):

1.     The Government and the defense - that is, Defendant Swartz, his defense counsel and their staff, and any experts or investigators with whom defense counsel elects to consult- shall produce all documents, files and records discoverable under Fed. R. Crim. P. 16 and L.R. 116.1-116.2 ("discovery materials") for review in accordance with the conditions set by this Order.

2.     With the exceptions listed below, the defense may obtain, make, and exchange amongst themselves copies of any discovery materials they deem necessary to prepare the defense of this case. All discovery materials and copies of discovery materials made by them or

provided to them by the Government shall be kept securely at their offices, residences, or while it

is being reviewed in any other location

      a.      Per the parties' agreement, and without prejudice to a future application based on

good cause by the defendant as set forth below, the Government will not, at this point, provide

the defense complete imaged copies of all the files contained on four Samsung hard drives

delivered to the Government by Defendant Aaron Swartz on June 17, 2011, and journal articles

and other materials contained on a Maxtor hard drive seized by the Government at MIT on

January 6, 2011.  In lieu of the defense receiving complete copies of these hard drives:

      i.      The Government shall provide the defense electronic copies of those hard drives

from which will be redacted all articles downloaded from JSTOR with the exception of

approximately 350,000 separate articles that JSTOR released for free, public access on

September 7, 2011, with those files' metadata intact in a form that will permit adequate forensic

examination of the files.  If this is not practicable, the parties shall work to agree on procedures

to implement paragraph 2 (a) (v) (C) of this Order.  The parties shall return to this Court with a

proposed supplemental order and, if necessary, any disagreements they may have concerning

sufficient security limitations carefully narrowed.  All other aspects are severable and shall

remain in full force and effect.

      ii.      The Government shall provide the defense a report listing all the files on the hard

drives, along with the files' metadata.

      iii.      The Government shall provide the defense a bibliographic-type listing of the

JSTOR articles found on the hard drives in sufficient detail to enable the defense to identify each

such article.

iv.    The Government shall make forensic copies of the complete unredacted hard

drives available for review by the defense at the Boston Office of the Secret Service at

reasonable times upon 7 day notice that any member of the defense wants to inspect or conduct

forensic tests upon the hard drives.  During any review conducted by the defense, the Secret

Service shall make an agent otherwise unaffiliated with the investigation and prosecution of this

case available to provide assistance.  This agent shall not communicate with the prosecution

team about what items the defense reviews and shall not be present during the viewing and/or

testing, except at the defense's request or with prior approval of the Court.  The parties will agree

upon additional procedures necessary to ensure the security of the records and files stored on

these hard drives in the event that the defense elects to do further inspection or conduct forensic

examinations upon the hard drives at the Secret Service.

v.    The defense shall not move for and the Court will not grant, an order requiring the

Government to provide the defense copies of all the files on these hard drives, unless the defense

demonstrates to the Court by a preponderance of the evidence that (A) defense counsel after

inspection and forensic examination  of the discovery materials provided pursuant to this

agreement has a well founded basis, which will be particularized for the Court, that additional

forensic testing on files other than those produced under subparagraph i, above, will lead to

evidence material to the defense that cannot be adequately developed from the discovery

materials provided pursuant to paragraphs 2 (a) (i-iii); or (B) the requested additional production

is otherwise necessary to protect Defendant's constitutional rights; and (C) the defense's storage

of and Defendant's access to all of these files will be under sufficiently secure restrictions to

prevent the files' theft or public distribution (including restrictions on the location of the files'

3

Case 1:13-cv-00498-CKK   Document 16-1   Filed 07/19/13   Page 30 of 33
Case 1:11-cr-10260-NMG   Document 127-1   Filed 06/03/13   Page 5 of 7
Case 1:11-cr-10260-NMG   Document 124   Filed 05/30/13   Page 4 of 13

storage, restrictions on who may have physical or electronic access to the files, the conditions

under which Defendant can access the files, and the posting of substantial, third party financial

security).

        b.      Defendant may inspect, but may not be given or allowed to reproduce, copies of:

        (1)     Two e-mail chains identified by the Government containing discussions of security weaknesses in MIT's computer network;

        (2)     Seven e-mail chains (or portions of chains) identified by the Government containing discussions of security methods of and weaknesses in JSTOR's network; and

        (3)     Police reports containing the name of one student who identified the defendant from a photo spread, and one non-law enforcement witness, who has been charged but not convicted in state court in a matter arising out of a personal relationship.

Defense counsel will, however, receive unredacted email chains and police reports of the

identification which the defendant may fully inspect without copying at counsel's office.

        3.      The Government and the defense shall use the opposing party's discovery

materials solely and exclusively to litigate this case (including investigation, pre-trial motions,

trial preparation, trial, and appeal), and not for any other purpose.   In the event either party

believes it necessary to use any such materials for any other purpose, they may

seek leave of Court, in which instance opposing counsel and victims shall have an opportunity to

be heard.

        4.      Except when preparing a potential witness, the defense shall not show or make the

discovery materials available by any means (electronic, physical or otherwise) to any person who

is not a member of the defense, absent further order of this Court.  Once a potential witness has

also signed and agreed to be bound by the terms of this Protective Order, the defense may show

the potential witness discovery materials necessary to prepare them, but may not give or allow the potential witness to retain the discovery materials or copies of them.

5.      Each person receiving access to an opposing party's discovery materials other than counsel for the government, law enforcement officers, and counsel for the Defendant, shall first sign and date a copy of this Order to indicate their understanding of, acknowledgment of, and agreement to abide by its terms.  Both the Government attorney and Defense counsel shall keep the signed copies in the event of a disclosure or use of discovery materials prohibited by this Order.  Neither party shall be required to disclose to the other party who has been given access to what discovery materials, absent further order of this Court following an opportunity to be heard.

6.      Defense counsel shall promptly notify the Government and this Court, and Government counsel shall promptly notify Defense counsel and this Court, if any discovery materials are (a) used in a manner inconsistent with this Order or (b) disclosed either intentionally or unintentionally to anyone not designated by this Order or further order of the Court.  Each member of the defense and potential witness provided access to discovery materials shall promptly notify defense counsel of any such disclosures.

7.      At the end of these proceedings, including any potential appeals, the defense shall destroy all copies of discovery materials received and made by it.  Defense counsel may keep one copy of all discovery materials for such additional time as they deem necessary to ensure their ability to satisfy all professional obligations to Defendant in this matter.  The Government may keep one copy of all defense discovery materials for such additional time as it deems necessary to satisfy its professional obligations and any relevant statutes, regulations, or policies.

5

8.     Nothing in this protective order is intended to otherwise restrict the proper use by

the parties of any discovery materials during the investigation, pre-trial litigation, trial

preparation, trial or appeal of this matter.

SO STIPULATED.


_____
Aaron Swartz
Defendant

_____
Stephen P. Heymann
Scott L. Garland
Assistant U.S. Attorneys


_____
Martin G. Weinberg
Defense Counsel


SO ORDERED.

_____
JUDITH G. DEIN
United States Chief Magistrate Judge

Date: 11\30\11

## TAB B

Discovery Materials Not to Be Disclosed

1.  Transcripts of witnesses' testimony before the state and federal grand juries which returned indictments against Aaron Swartz;

2.  Documents and records pertaining to testimonial immunity accorded witnesses proffering and testifying;

3.  Content and metadata downloaded from JSTOR between September 24, 2010 and January 6, 2011;

4.  Police reports, criminal history reports, fingerprint identification reports, photospreads, booking photos, and booking reports pertaining to third parties;

5.  Forensic images of computer hardware, all text reproductions of keepgrabbing.py, serveblocks.py, oaigrab.py and keepgrabbing2.py, and all section by section analyses of the listed computer code; and

6.  Materials previously identified as containing sensitive network information produced subject to paragraph 2(b) of the Protective Order.

2197833.2
2198026.1