United States District Court
District of Massachusetts

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. |
| ) | 11-10260-NMG |
| AARON SWARTZ, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM & ORDER

GORTON, J.

The government dismissed all charges against defendant in this case shortly after his demise in January, 2013. The instant dispute concerns discovery materials produced while the criminal case against defendant was ongoing and which are subject to a protective order. Defendant's estate now moves to modify the protective order to permit the disclosure to Congress and the public of certain discovery materials, subject to specific limitations. The government, along with the proposed intervenors, agree with the estate's request except to the extent that the estate seeks disclosure of identifying information and details revealing the deficiencies of the victims' computer networks.

I. Background

Defendant Aaron Swartz was indicted in July, 2011 for allegedly attempting to download all of the electronically

-1-

archived materials maintained by JSTOR while accessing them through a computer network operated by the Massachusetts Institute of Technology ("MIT").

In November, 2011, the Court entered a blanket protective order ("the Protective Order") generally barring defendant from disclosing any documents, files or records discoverable under Fed. R. Crim. P. 16 to anyone other than potential witnesses, absent further court order. The Protective Order identified JSTOR and MIT as victims of the alleged crimes, specifically cited concerns that such discovery materials included potentially sensitive, confidential and proprietary communications belonging to them and required defendant to destroy all copies of discovery materials at the conclusion of the criminal case.

Defendant's death occurred before this Court held a suppression hearing, decided dispositive motions or conducted the trial. Although the government dismissed all charges against defendant soon thereafter, media coverage of the government's investigation into, and ultimate prosecution of, Mr. Swartz has escalated since the time of his death.

In late January, 2013, the House Committee on Oversight and Government Reform ("the House Committee") of the United States Congress announced its intention to investigate the prosecution of Mr. Swartz and to review one of the statutes under which he was charged. By letter dated February 4, 2013, the Chairman and

Ranking Member of the House Committee contacted Keker & Van Nest LLP, formerly counsel to Mr. Swartz and who now purport to represent his estate, to request copies of documents provided to Mr. Swartz during his criminal case.[1] Shortly thereafter, local counsel for the estate had discussions with the government about modification of the Protective Order.

At approximately the same time Congress and the media began to scrutinize Mr. Swartz's prosecution, employees of the government, MIT and JSTOR were subjected to a variety of threats and harassing incidents by individuals purportedly retaliating in the name of Mr. Swartz. Both the government and MIT suffered intrusions into their respective computer networks, resulting in outages to MIT's email system and a compromise of the website of the United States Sentencing Commission. Employees of the United States Attorney's Office and MIT who were in some way associated with Mr. Swartz's case received threatening communications.

Most troubling, in February, 2013 an unidentified individual called MIT and reported that a gunman in armor was on campus seeking to harm the President of MIT in retaliation for its involvement in the events surrounding Mr. Swartz's death. Although the report turned out to be a hoax, more than 30

---

[1] The government and MIT question whether counsel for the estate has standing to seek such modification now that the case against their client has been dismissed, although neither cites any authority. The Court assumes without deciding that they do.

-3-

Cambridge and MIT police officers responded to the call and MIT's campus was locked down for several hours while law enforcement searched for evidence of a gunman.

During that same period, the government, MIT and JSTOR began cooperating directly with the Congressional investigation. In particular, both MIT and JSTOR have produced documents in response to that inquiry with certain identifying information redacted in order to protect the privacy and safety of the individuals involved.

Counsel for the estate has moved to modify the Protective Order and served notice of its motion upon JSTOR and MIT. The government timely opposed the motion, in part. Victims JSTOR and MIT timely moved to intervene, with the assent of the parties, and oppose, in part, modification of the Protective Order.

## II. Motions to Intervene in Order to Oppose Modification

As an initial matter, JSTOR and MIT have moved to intervene at the invitation of defendant's estate and with the assent of the government. Several courts have recognized this kind of limited intervention as a proper device by which third parties may assert their interest in protecting confidential materials obtained during criminal proceedings. See, e.g. Harrelson v. United States, 967 F. Supp. 909, 913 (W.D. Tex. 1997) (noting third-party entities may request intervention to protect "privileged or confidential information" obtained from them and

citing cases). Because a great deal of the discovery sought is information originally obtained from MIT and JSTOR in the form of emails and the parties agree that intervention is appropriate, their motions to intervene will be allowed.

### III. Motion to Modify the Protective Order

The government, the estate and the intervenors agree that certain modifications to the Protective Order are appropriate to permit the production of discovery materials to Congress. In particular, the parties consent to production of most discovery materials, with the exception of grand jury transcripts, immunity orders, criminal history information, the downloaded JSTOR articles and associated computer code. They also agree that certain personal information contained within those documents, such as Social Security numbers and contact information, as well as the identity of four witnesses questioned by law enforcement, should be redacted from any materials produced. In sum, notwithstanding the restrictive language contained within the Protective Order, the parties and intervenors agree in general terms that the Protective Order should be modified to permit counsel for the estate (and formerly defendant's counsel) to disclose much of the discovery materials to Congress and to the public.

The dispute centers around whether the names and identifying information of JSTOR, MIT and law enforcement personnel should be

redacted from the materials produced.  With the exception of the two Assistant United States Attorneys who prosecuted the case, the government's expert, and three law enforcement officers, the government, MIT and JSTOR seek redaction of the names and any identifying information for all current and former JSTOR and MIT employees and other law enforcement personnel for their own protection.  The estate, meanwhile, asserts that such identifying information is important to understanding the investigation and prosecution of Mr. Swartz and must be disclosed.

MIT also opposes disclosure of any materials containing information related to the vulnerabilities of its computer network without having an opportunity to review and redact those documents.

### A.   Protective Orders under Fed. R. Crim. P. 16

Fed. R. Crim. P. 16(d) permits a court to enter a protective order in a criminal case for "good cause." United States v. Bulger, 283 F.R.D. 46, 52 (D. Mass. 2012).  The First Circuit has not articulated a definitive standard for the modification or vacation of a protective order in a criminal case, although courts undeniably retain that power as part of their inherent authority over the discovery process. Id. at 53.  The issue was, however, recently analyzed in an exhaustive opinion by the Bulger court and this Court agrees that it is appropriate to analyze the "good cause" requirement under the criminal rules in light of

precedent analyzing protective orders entered in civil cases. See id. at 52-53 (analogizing to civil discovery orders and citing Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir. 1988)).

The task of determining whether and how to modify a protective order under Fed. R. Crim. P. 16(d) requires a district court to "weigh[] and balanc[e] a number of relevant factors." Id. at 53. Those factors include, inter alia, any change in circumstances necessitating modification, a party's reliance upon the protective order when it produced discovery materials and the privacy interests of third parties. See id. at 53-55 (discussing relevant factors).

The interests of third parties bear particular emphasis because much of the discovery materials sought were produced by victims (MIT and JSTOR) and the information sought to be disclosed involves the identities of their representatives. See id. at 55; United States v. Salemme, 985 F. Supp. 193, 197 (D. Mass. 1997) ("The privacy interests of third parties may weigh heavily in deciding issues of impoundment."); see also United States v. Kravetz, 706 F.3d 47, 61 (1st Cir. 2013) (noting privacy rights of third parties can limit public's presumptive right of access to judicial records). This is particularly true where disclosure of the materials in question raise safety concerns. See Bulger, 283 F.R.D. at 55-56 (noting that advisory

committee notes to Rule 16(d) contemplated need to protect material where "there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed").

### B. Presumption of Public Access

In support of its motion seeking modification of the discovery order, the estate emphasizes the public's heightened interest Mr. Swartz's prosecution and invokes the presumptive right of the public to access criminal proceedings as a reason favoring disclosure of the contested materials. In order to weigh effectively the interests at stake the Court will first address whether that right attaches to the materials at bar.

The public's presumptive right of access derives from both the First Amendment and common law and ensures access to criminal trials, pretrial proceedings and materials on which a court relies when determining the litigants' substantive rights. In re Providence Journal Co., Inc., 293 F.3d 1, 9-10 (1st Cir. 2002). No trial was held in this case, however, nor was there an evidentiary hearing or an opinion on the merits. Rather, the estate seeks access to discovery materials that were, in large part, subject to a protective order, produced in response to subpoenas and not incorporated into judicial records.

The First Circuit recently found that "public access has little positive role in the criminal discovery process" and

suggested that there is no presumption of public access even to civil discovery materials that are

> neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers.

United States v. Kravetz, 706 F.3d 47, 54-55 (1st Cir. 2013). The Kravetz court specifically determined that documents produced pursuant to a pre-trial subpoena duces tecum "are not entitled to a presumption of access." Id. at 53. While it did not decide, specifically, whether discovery materials produced pursuant to grand jury subpoenas are also outside the reach of the presumption of public access, there is little reason to think that the Kravetz decision does not also apply to such materials considering that confidentiality attaches to all aspects of grand jury proceedings as a matter of law. See, e.g. In re Grand Jury Subpoena, 662 F.3d 65, 67 (1st Cir. 2011) (using pseudonyms in place of the names of subpoenaed entities in order to "preserve the confidentiality of grand jury proceedings" established by Fed. R. Crim. P. 6(e)).

Accordingly, the Court concludes that no presumptive right of access extends to most of the discovery materials at issue and will therefore afford the claimed interest of the estate little deference.

C.  **Redaction of Identifying Information**

The Court turns to the "good cause" inquiry. After weighing all of the interests at stake, it concludes that the estate's interest in disclosing the identity of individuals named in the production, as it relates to enhancing the public's understanding of the investigation and prosecution of Mr. Swartz, is substantially outweighed by the interest of the government and the victims in shielding their employees from potential retaliation.

The government, MIT and JSTOR have each adduced credible evidence that individuals connected to the investigation have suffered incidents of harassment and retaliation. Even individuals only superficially connected to the investigation, including a relative of one of the prosecuting attorneys, have received threatening communications. Those identified threats demonstrate a strong risk that any individuals newly named in the discovery materials face potential reprisals and that their interests strongly support redaction of such identifying information. See Bulger, 283 F.R.D. at 56 (declining to permit disclosure of discovery materials implicating witness safety); Salemme, 985 F. Supp. at 197.

In contrast, the estate has not identified specific documents for which redaction of identifying information will undercut the public's understanding of the investigation and

-10-

prosecution of Mr. Swartz. While it is possible that removal of such information will render some documents more difficult to understand for lack of knowledge of "who" is speaking, that is a minor concern considering that the content within those documents will be largely unaltered. Further, the extent to which redaction impairs the Congressional investigation may be rectified with assistance from the government, MIT or JSTOR, any of which can address such concerns on a case-by-case basis.

The estate also argues that the Protective Order should be modified because the government would have had to disclose identifying information at trial and therefore could not have relied upon the Order. That argument asks too much. The parties' compromise already reflects that inevitability because the government has agreed not to seek redaction of six of its principal witnesses. Beyond that, the Court will not speculate as to who would have been identified during the course of trial. Nor can the Court guess how the government would have proceeded at trial if its prospective witnesses faced threats of harassment and retaliation, or how it would address the concerns of MIT and JSTOR regarding discussion of the vulnerabilities of their networks. The Protective Order anticipated the latter concerns, and in that regard, the victims clearly continued to rely upon it.

In the alternative, the estate contends that any documents

referenced in the parties' briefing are part of the judicial record and the identifying information therein should be disclosed. Although the estate rightly points out that the presumption of public access may attach to those documents because, unlike discovery materials, motions to suppress and dismiss are "judicial records," redaction of even judicial records may be appropriate when third-party privacy interests are jeopardized. See Kravetz, 706 F.3d at 62-63. Further, the exhibits attached in support of defendant's motion to suppress and to dismiss were filed under seal. The fact that one of those motions quoted from sealed documents, identified certain individuals and was later publicized by a student newspaper, does not justify further dissemination of that information in light of the credible threat of retaliation identified by the government and the intervenors.

D. **Redaction of Information Relating to Network Security**

Separate and apart from defendant's request to disclose identifying information, MIT seeks an opportunity to review discovery materials in the estate's possession which relate to the weaknesses of MIT's computer network. Upon balancing the interests at stake, the Court concludes that both MIT and JSTOR should have an opportunity to review and redact discovery materials that invoke those concerns prior to their disclosure.

Both victims were entitled to rely on the Protective Order

for protection of such materials. As discussed <u>supra</u>, MIT and JSTOR produced discovery materials subject to subpoena and the Protective Order and did so solely for the purpose of assisting Mr. Swartz with his defense. The Court contemplated the specific concern at issue when it entered the Protective Order, noting that the discovery materials included records obtained from JSTOR and MIT that discussed "the victims' computer systems and security measures."

Redaction of this kind of information perhaps runs a greater risk of rendering aspects of the government's investigation less clear to the public because it will result in the redaction of what was said, rather than merely who said it. Even so, the redaction is justified in order to protect the victims from further network intrusions. Mr. Swartz, at the very least, used the computer networks of both MIT and JSTOR in an unapproved manner and they were justifiably concerned that their internal communications analyzing his intrusion remain confidential. Since Mr. Swartz's death, MIT, in particular, has suffered additional network breaches, suggesting that the implementation of a Protective Order was justified. The fact that these documents raise security concerns for third parties similarly weighs in favor of redaction. <u>See</u> <u>Kravetz</u>, 706 F.3d at 62-63 (privacy concerns); <u>Bulger</u>, 283 F.R.D. at 55-56 (contemplating safety concerns). Finally, the fact that both MIT and JSTOR are

cooperating with the Congressional inquiry into Mr. Swartz's prosecution suggests that, to the extent such redactions interfere with the comprehension of any documents, each can address those problems with the House Committee on a case-by-case basis.

In sum, although the public has expressed a strong interest in the investigation and prosecution of Mr. Swartz, that fact does not bestow upon his estate the right to disclose criminal discovery materials produced to his counsel solely for the purpose of preparing for trial. This is particularly true where disclosure may subject third parties to threats and harassment, and where those same parties have already expressed their intention to make public the records sought with appropriate redaction. See Bulger, 283 F.R.D. 46 at 55 (describing court's role as weighing need for modification against need for protection while factoring in "availability of alternatives"). Nevertheless, in light of the compromise reached by all parties, the Court will allow the estate's motion, in part, and enable it to disclose discovery materials in its possession after redaction of the identity of individuals and sensitive network information.

-14-

**ORDER**

In accordance with the foregoing,

1) the motions to intervene by the Massachusetts Institute of Technology (Docket No. 113) and JSTOR (Docket No. 116) for the purpose of partially opposing the motion to modify the protective order are **ALLOWED**,

2) the motion of defendant's estate to modify the protective order (Docket No. 109) is, with respect to the aspects upon which the parties and intervenors agree, **ALLOWED**, but, with respect to disclosure of identifying and network information, **DENIED**,

3) the estate shall afford the intervenors an opportunity to review and redact all documents produced in discovery to address identifying and sensitive network information, and

4) the parties and intervenors shall submit a joint proposed order for modification of the Protective Order consistent with this opinion on or before May 27, 2013.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 13, 2013

-15-