IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEVIN POULSEN,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**DEPARTMENT OF HOMELAND SECURITY,** )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 13-0498 (CKK) |

### PLAINTIFF'S NOTICE IN RESPONSE TO
### ORDERS DATED JULY 19 & 20, 2013

By orders dated July 19 & 20, 2013, the Court directed the parties to indicate their positions with respect to four issues identified by the Court concerning the pending motions of the Massachusetts Institute of Technology ("MIT") and Ithaka Harbors, Inc., ("JSTOR") to intervene in this action (Dkt. Nos. 15 & 16). Plaintiff Kevin Poulsen hereby submits the following responses.

1) **The party's position on intervention by MIT and JSTOR in this action (both as of right and permissive).**

Mr. Poulsen opposes the motions to intervene, either as of right or permissively. The D.C. Circuit has identified four requirements that must be satisfied to warrant intervention as of right under Rule 24(a)(2): "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation and internal quotation marks omitted). Mr. Poulsen submits that MIT and JSTOR have failed to satisfy three of the four requirements.

With respect to timeliness, MIT asserts that it "has moved expeditiously to protect its interests." Memorandum in Support of MIT's Motion to Intervene ("MIT Mem.") at 6. JSTOR similarly asserts that it "has moved to intervene in a timely fashion, less than two weeks after it learned of this Court's July 5 order." Memorandum in Support of JSTOR's Motion to Intervene ("JSTOR Mem.") at 4. Contrary to their assertions, filing the instant motions was not the first opportunity MIT and JSTOR had to assert their interest in the confidentiality of information they provided to the government. MIT itself points to 6 C.F.R. § 5.8 (MIT Mem. at 11), the Department of Homeland Security regulation that permits submitters of "confidential" information to designate the data as subject to confidential treatment *at the time the information is submitted*. 6 C.F.R. § 5.8(c). Such timely designation triggers an agency obligation to inform the submitter when a FOIA request for the subject information is received, *id.*, § 5.8(d), and provide the submitter an opportunity to object to disclosure, *id.*, § 5.8(f).[1] Notably, these procedures are similar to the ones MIT and JSTOR now belatedly ask the Court to make available here.

The record contains no indication that MIT or JSTOR availed themselves of the protections available under the regulation at the time they provided the government with the material at issue more than two years ago.[2] Resort to the established process – which merely required MIT and JSTOR "to designate, by appropriate markings, either at the time

---

[1] Lest there be any question as to whether the same procedure exists at the Justice Department – to which the MIT and JSTOR information might initially have been provided – the identical submitter protection process is set out in DOJ's regulation at 28 C.F.R. § 16.8.

[2] Although the movants do not indicate when they provided relevant information to the government, the protective order issued in *United States v. Swartz*, Crim. No. 11- 10260 (D. Mass.) suggests that the information was provided in the early part of 2011. *See* MIT Exhibit B, Tab A.

of submission or at a reasonable time thereafter, any portions of its submission that it considers to be protected from disclosure," *id.*, § 5.8(c) – was the appropriate means to assert the interests MIT and JSTOR now belatedly seek to inject into this litigation.[3]

As the Supreme Court has held, "the point to which the suit has progressed is one factor in the determination of timeliness, [but] it is not solely dispositive." *NAACP v. New York*, 413 U.S. 345, 365-366 (1973). Rather, "[t]imeliness is to be determined from all the circumstances" and such determination is made "by the court in the exercise of its sound discretion." *Id*. at 366 (footnote omitted); *see also Associated Builders and Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999). In light of the movants' apparent failure to avail themselves of the regulatory process specifically tailored to allow submitters of "confidential" information to articulate their objections to the disclosure of information requested under FOIA – *before* litigation is already pending – their motions to intervene can hardly be characterized as "timely" assertions of their purported interests.

While Mr. Poulsen acknowledges that MIT and JSTOR have "an interest in the action," he submits that this litigation does not "threaten to impair that interest" and that defendant DHS "can be an adequate representative of [movants'] interests." *Karsner*, 532 F.3d at 885. Indeed, it is precisely because DHS can adequately represent MIT's and JSTOR's purported interests that this proceeding can in no way reasonably be seen as threatening those interests. In assessing DHS's ability to adequately protect and represent movants' interests in the confidentiality of information they provided to the government, the Court must begin with the recognition that "[a]gencies are entitled to a presumption

---

[3] As MIT notes, the regulatory protections are "not limited to raising objections based on Exemption 4; submitters may 'specify . . . *all grounds* for withholding any portion of the information under *any exemption* of the FOIA.'" MIT Mem. at 11, quoting 6 C.F.R. § 5.8(f) (emphasis added).

3

that they compl[y] with the obligation to [properly apply FOIA]." *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007), citing *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). *See also U.S. Postal Service v. Gregory*, 534 U.S. 1, 10 (2001) (same). Indeed, this Court has recognized that "conclusory and speculative assertions, unsupported by any competent evidence, are patently insufficient to overcome the presumption of administrative regularity." *Elk Associates Funding Corp. v. U.S. Small Business Admin.*, 858 F. Supp. 2d 1, 24 (D.D.C. 2012) (citation omitted); *see also AstraZeneca Pharmaceuticals LP v. FDA*, 850 F. Supp. 2d 230, 243 (D.D.C. 2012) (same).

In asserting that the government cannot adequately represent their interests here, MIT and JSTOR offer only the kind of "conclusory and speculative assertions" that are insufficient to show that the agency will not comply with its legal obligations to protect recognized interests in the FOIA process. MIT asserts that "DHS cannot adequately represent MIT's interests in this litigation because . . . MIT and its employees would incur the injury from the release of such information, not DHS." MIT Mem. at 8. JSTOR asserts that "Defendant's interest lies in satisfying its statutory disclosure obligations." JSTOR Mem. at 5 (citation omitted). Both assertions are remarkable, suggesting – without any supporting evidence – that DHS and its counsel, the Justice Department, are either unwilling or unable to adequately protect properly-exempt personal or commercial information. Given the government's aggressive defense of its withholding decisions in hundreds of cases over the past four decades – mostly before this Court – it would be

4

unprecedented for the Court to find that the agency and its counsel cannot "adequately represent" the interests of parties such as MIT and JSTOR. Indeed, the competence of agencies in aggressively protecting legitimate private interests likely explains the rarity of FOIA cases in which third-party intervention has been deemed necessary or warranted.[4] A finding by the Court that the government is somehow unable to represent the interests of third-parties in FOIA cases could significantly alter the decades-long norm in which two parties – the agency and the requester – are deemed to adequately represent the competing interests. *See, e.g., Deutsche Bank Nat. Trust Co. v. FDIC*, 717 F.3d 189, 192-193 (D.C. Cir. 2013) (noting that "a precedent allowing" intervention under certain common circumstances "would presumably have widespread effect").[5]

If there is anything that distinguishes this case from most other FOIA cases on the Court's docket, it is the fact that the government here is uniquely able to represent the interests of MIT and JSTOR *more* aggressively, and in a *better* informed manner, than in the typical case. Indeed, the unique consultation process the movants and the government

---

[4] Movants identify three FOIA cases in which intervention has been permitted, and all are distinguishable. In *Judicial Watch v. Department of Army*, 466 F. Supp. 2d 112 (D.D.C. 2006), the submitter of commercial information was notified of the FOIA request pursuant to a Defense Department submitter notification regulation similar to 6 C.F.R. § 5.8, the relevant DHS regulation. 466 F. Supp. 2d at 122 n.7. In *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004), the agency regulation "requir[ed] that persons whose FDA records include trade secrets or confidential information intervene to defend the exempt status of the records or else risk FDA's public disclosure of the records"). Finally, in *Dow Jones & Co., Inc. v. U.S. Dept. of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995), a widow was permitted to intervene when the government appeared unlikely to appeal an order disclosing her husband's suicide note and the court thus found that her "interest may not be adequately protected on appeal."

[5] Mr. Paulsen is filing herewith the statement of Citizens for Responsibility and Ethics in Washington (CREW"), a frequent litigant in FOIA cases before this Court, in which CREW discusses "the severely detrimental impact intervention . . . would have not only on this case, but on the FOIA process as a whole." Exhibit A (filed herewith).

have undertaken in *United States v. Swartz*, Crim. No. 11-10260 (D. Mass.), ensures that the agency is fully-apprised of movants' concerns with respect to information they provided to the government.[6]  Neither MIT nor JSTOR asserts (let alone demonstrates) that the positions taken by the government in the Boston proceeding have caused them to believe that the agency will be insensitive to, or dismissive of, whatever legitimate interests they might have in the withholding of sensitive information from disclosure.  Mr. Poulsen thus submits that the movants have not demonstrated that, in the absence of their intervention, their interests will not be adequately represented.  *See Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 10 (D.D.C. 2001)  (intervention denied where "[t]here is no indication in the record that any . . . risk [of inadequate representation] exists").  In sum, MIT and JSTOR have failed to establish an entitlement to intervene in this action as of right.

The Court has "wide latitude" in exercising its discretion to allow or deny permissive intervention.  *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  In exercising its discretion, the Court must consider whether the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).  Mr. Poulsen submits that the intervention of MIT and JSTOR in this action will cause undue delay, a result with particular significance in a FOIA case.  *See*, *e.g.*, *Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005) ("Plainly, there is value to obtaining [information] earlier than one otherwise would."); *Payne*

---

[6] As MIT acknowledges, "judges of this Court have found that an agency's consultation with the submitter of the responsive material and consideration of the submitter's objections to disclosure weigh in favor of finding that the agency's response to the FOIA request was not arbitrary or capricious." MIT Mem. at 11 (citations omitted).

*Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("stale information is of little value").

The FOIA request at issue here was submitted more than six months ago, and suit was filed more than three months ago. Under FOIA's time requirements, Mr. Poulsen was entitled to a determination on his request within 20 days, 5 U.S.C. § 552(a)(6)(A), but such determination has not yet been issued. On July 5, the Court ordered the agency to "promptly release to Plaintiff all responsive documents that it has gathered thus far and . . . continue to produce additional responsive documents that it locates on a rolling basis." Minute Order dated July 5, 2013. The government informed plaintiff's counsel that disclosure of responsive records was to begin on July 20, but the agency's disclosure obligations were stayed by the Court as a result of MIT's intention to move for intervention. Minute Order dated July 18, 2013. As such, the proposed intervention has already adversely impacted Mr. Poulsen's rights in this action.

It is clear that the "review" process the movants envision would bring with it the potential to significantly delay further proceedings in this case. As MIT acknowledges, "[i]n the event that the government objects to any redactions proposed by MIT during the limited review period, MIT would also have the opportunity to move for appropriate relief in this Court before the disputed information is released." MIT Mem. at 10. The circumstances here are thus similar to those in *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 236 (D.D.C. 2011), where the Court found permissive intervention would "unduly delay the adjudication of the original parties' rights." The Court noted that, like here, "the instant motion for intervention" had "already delayed" the proceeding and that "intervention would likely delay the resolution of this action . . . even

7

further by triggering renewed negotiations . . . in an attempt to resolve the proposed intervenors' claims simultaneously with the [plaintiff's] claims."

Mr. Poulsen notes that "[t]he Court has broad discretion to permit the proposed intervenors to participate as *amici curiae*," *id*. at 237; *see also Seminole Nation*, 206 F.R.D. at 10, and he would consent to such participation. Should the Court determine, notwithstanding Mr. Poulsen's opposition, that intervention would be appropriate, it "may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010) (citations omitted).

>   **2)   The party's position on the requests of MIT and JSTOR that the Court permit them to review and redact certain categories of information from any documents that originated from, or relate to, MIT or JSTOR.**

Mr. Poulsen opposes the movants' requests to review and redact any information responsive to the FOIA request at issue here. Mr. Poulsen is unaware of any authority that would grant to a private party the power to redact material from agency records subject to disclosure under FOIA, a power that is properly and exclusively held by the agency that maintains such records. Further, to the extent that JSTOR seeks authority to "redact those documents consistent with the standards set forth in Judge Gorton's opinion and order in the Boston Case," JSTOR Mem. at 6, Mr. Poulsen notes that the referenced order was, in part, premised upon Judge Gorton's explicit rejection of "the public's heightened interest [in] Mr. Swartz's prosecution" as a factor to consider in deciding whether the material at issue there should be disclosed. Memorandum & Order (May 13, 2013), *United States v. Swartz*, Crim. No. 11-10260 (D. Mass.), at 8-9. Unlike the standards deemed applicable there, under FOIA, the Court "must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *U.S. Dep't of Justice v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989). As such, it would be impermissible to apply those standards here.[7]

### 3) The party's position on MIT's and JSTOR's proposed review process.

Mr. Poulsen opposes the "review" process proposed by MIT and JSTOR for the reasons stated above. Mr. Poulsen further notes that the movants seek not only to "review" material prior to its disclosure, but also seek the authority to dictate redactions of information beyond any redactions that the agency might determine to be proper. *See* MIT Proposed Order ("DHS will . . . disclose such MIT-Related Documents to Plaintiff in a manner that implements any redactions proposed by MIT"); JSTOR Proposed Order ("Defendant shall . . . allow JSTOR to make redactions"). As noted, granting such authority to a non-agency third party has no basis in the law and would be unprecedented. Further, the power sought by MIT and JSTOR is sweeping, extending not only to the actual information they provided to the government, but also to any agency records that "discuss" such information. *See* MIT Proposed Order ("any documents responsive to Plaintiff's FOIA request that . . . discuss information obtained from MIT"). Resolution of any disputes as to whether or not particular agency records "discuss" information provided by MIT or JSTOR would likely result in substantial delays in the disclosure of information requested by Mr. Paulsen.

---

[7] JSTOR asserts that "Judge Gorton's order in the Boston Case provides an appropriate template for protecting JSTOR's interests here, and following that approach in this case would be fully consistent with FOIA." JSTOR Mem. at 6. As *Reporters Comm.* and its progeny make clear, that assertion is incorrect. As JSTOR acknowledges, "[t]he prosecution of Mr. Swartz has become a matter of intense public interest." *Id*. at 2.

  4)  The party's understanding as to the extent to which the documents at issue in this action comprise some or all of the same documents that are the subject of Judge Nathaniel Gorton's May 13, 2013 Memorandum & Order in *United States v. Swartz*, Crim. No. 11- 10260 (D. Mass.).

Mr. Paulsen has no knowledge as to the extent to which the records at issue here comprise some or all of the documents subject to Judge Gorton's memorandum and order. To date, defendant DHS has not even identified the amount of material it has determined to be responsive to Mr. Paulsen's FOIA request, despite the fact that the request has now been pending for more than six months.

## CONCLUSION

For the foregoing reasons, the motions of MIT and JSTOR to intervene should be denied.

                Respectfully submitted,

                */s/ David L. Sobel*
                DAVID L. SOBEL, D.C. Bar No. 360418
                1818 N Street, N.W.
                Suite 410
                Washington, DC 20036
                (202) 246-6180

                Counsel for Plaintiff