UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**KEVIN POULSEN**    :
520 Third Street, Suite 305    :
San Francisco, CA 94107    :
                              Plaintiff,    :
                                     Case No:  13-cv-00498(CKK)
                        v.    :

**DEPARTMENT OF HOMELAND SECURITY**    :
Washington, DC 20258    :
                                Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF JSTOR'S MOTION TO INTERVENE**

Dated:  July 30, 2013

Bruce E. Yannett [D.C. Bar # 416306]
Jeremy Feigelson (admitted pro hac vice)
Jared I. Kagan (admitted pro hac vice)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
beyannett@debevoise.com
jfeigels@debevoise.com
jikagan@debevoise.com

*Counsel for Non-Party and
Proposed Intervenor Ithaka Harbors,
Inc. d/b/a JSTOR*

23943704v01

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I. JSTOR'S INTERVENTION IS FULLY SUPPORTED ........................................................2

    A. JSTOR's Motion To Intervene Is Timely ......................................................................2

    B. DHS Cannot Be Expected To Adequately Protect JSTOR's Interests ............................4

    C. JSTOR's Intervention Will Promote Prompt Release Of The Documents .....................5

II. ALTERNATIVES TO INTERVENTION ARE INAPPROPRIATE .....................................6

    A. Granting JSTOR Amicus Curiae Status Is Not Supported Here .....................................6

    B. A Reverse-FOIA Action Is Not The Appropriate Alternative ........................................7

CONCLUSION ..................................................................................................................................9

# **TABLE OF AUTHORITIES**

**CASES**

*Bass v. Richardson*,
   338 F. Supp. 478 (S.D.N.Y.1971) ................................................................................5

*CNA Fin. Corp. v. Donovan*,
   830 F.2d 1132 (D.C. Cir. 1987) ...................................................................................7

*Cooper Techs., Co. v. Dudas*,
   247 F.R.D. 510 (E.D. Va. 2007) ..................................................................................4

*District of Columbia v. Potomac Elec. Power Co.*,
   826 F. Supp. 2d 227 (D.D.C. 2011) .............................................................................7

*Fund for Constitutional Gov't v. Nat'l Archives & Records Service*,
   656 F.2d 856 (D.C. Cir. 1981) .....................................................................................4

*Hodge v. FBI*,
   703 F.3d 575 (D.C. Cir. 2013) .....................................................................................2

*In Defense of Animals v. United States Dep't of Agric.*,
   656 F. Supp. 2d 68 (D.D.C., 2009) ..............................................................................5

*Seminole Nation v. Norton*,
   206 F.R.D. 1 (D.D.C. 2001) .........................................................................................7

*U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989) .....................................................................................................4

*U.S. v. Michigan*,
   940 F.2d 143 (6th Cir. 1991) .......................................................................................6

**STATUTES**

5 U.S.C. § 552(b) ................................................................................................................3, 4

**OTHER AUTHORITIES**

6 C.F.R. § 5.8(c) ......................................................................................................................4

Fed. R. Civ. P. 24(a) ...............................................................................................................7

Fed. R. Civ. P. 24(b) ...............................................................................................................7

Fed. R. Crim. P. 6(e) ...............................................................................................................2

JSTOR submits this memorandum in follow-up to the July 23, 2013 telephonic court conference and in response to the Court's July 24, 2013 order directing that JSTOR supplement its July 19, 2013 motion to intervene. As instructed by the Court, this filing responds to specific issues raised in Plaintiff's filing of July 22, 2013 ("Plaintiff's Notice").

**Preliminary Statement**

JSTOR's not-for-profit mission is to increase access to knowledge. For nearly 20 years, JSTOR has advanced its mission by building an extensive, widely accessible and sustainable digital library of scholarly works that ensures the long-term preservation of this material. *See* "10 Things You Should Know About JSTOR," http://about.jstor.org/10things (last visited July 29, 2013). In this case, and consistent with its mission, JSTOR supports public access to the Secret Service's files on the Aaron Swartz case. JSTOR simply wishes to ensure that the names of its personnel and certain details about its computer systems are redacted from those files for reasons of employee privacy and system security. These undisputedly are legitimate interests. *See* Plaintiff's Notice at 3 ("Mr. Poulsen acknowledges that MIT and JSTOR have 'an interest in the action'" and satisfy that prong of the standard for intervention) (citation omitted).

All the parties and proposed intervenors thus *agree* that the documents should promptly see the light of day, and that the privacy and security interests are legitimate. The only question is how to protect those interests in a way that is legally appropriate, sensible and efficient. The answer to that question is intervention under Federal Rules of Civil Procedure 24(a) and (b). Granting JSTOR's motion to intervene would be consistent with FOIA and with the Federal Rules, and would help get the documents out to the public more quickly than the alternative of a reverse-FOIA action. It also would be consistent with the approach taken in *U.S. v. Swartz* in the District of Massachusetts (the "Boston Case"), where Judge Gorton has ordered similar redactions through a cooperative process that includes JSTOR, MIT and the government.

23943704v01

**Argument**

I.   **JSTOR's Intervention Is Fully Supported**

   A.   **JSTOR's Motion To Intervene Is Timely**

JSTOR moved to intervene just two weeks after this Court's July 5, 2013 order that the Secret Service should release documents. There is no merit to Plaintiff's suggestion that JSTOR has failed in some obligation to designate documents as confidential at the time they were "submitted." (Plaintiff's Notice at 2). A brief review of the facts will demonstrate that JSTOR has acted in an entirely timely way.

As an initial matter, it should be noted that JSTOR never provided documents directly to the Secret Service, and thus is hardly the typical "submitter" of information in a FOIA case. JSTOR produced certain documents and information to a grand jury in the Boston Case and to the U.S. Attorney's Office in Boston ("USAO"). The U.S. Secret Service, a part of Defendant Department of Homeland Security ("DHS"), was the lead investigative agency in the Boston Case. Accordingly, some of the documents and information provided by JSTOR may have found their way into the files of the Secret Service and thus would be at issue here.

The documents and information provided by JSTOR in the Boston Case were provided with an understanding that they would be treated as confidential. The relevant documents consist of (a) documents that JSTOR initially produced to the grand jury in response to subpoenas, and (b) documents that JSTOR later produced to the USAO in response to trial subpoenas. Supplemental Declaration of Kevin Guthrie (July 29, 2013) ("Suppl. Guthrie Decl.") ¶ 4. Confidentiality for FOIA purposes attached to the grand jury productions as a matter of law. *See* Fed. R. Crim. P. 6(e); *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (material covered by Rule 6(e) "is in turn covered by FOIA Exemption 3"). At the time of JSTOR's production in response to the trial subpoenas, the court in the Boston Case had entered a protective order.

JSTOR marked all of the documents produced under the trial subpoenas as confidential pursuant to the protective order. Suppl. Guthrie Decl. ¶ 4.[1]

Some – perhaps most – of the documents likely at issue here were generated by the government itself. JSTOR did not "submit" these documents in the first place, and has never even seen them. JSTOR expects that these documents would include, for example, intra-agency correspondence within the Secret Service, interagency correspondence between the Secret Service and the USAO, and the government's notes of interviews with JSTOR witnesses. *Id.* ¶ 5. JSTOR could not possibly have designated these documents as confidential before now.

Another category of documents consists of informal communications with the government in the context of the criminal investigation, such as email traffic between JSTOR and prosecutors about scheduling matters. JSTOR fully expected these communications to be treated as confidential. Suppl. Guthrie Decl. ¶ 5. Some of the emails include the names of individual JSTOR employees. It bears mention that these communications took place before Mr. Swartz's suicide, and thus before the events that heightened JSTOR's concern about privacy and security issues. *Id.* In any event, it would be extraordinary to suggest that JSTOR – as the victim of an allegedly criminal act under active investigation by the USAO and Secret Service – was obligated to attach a FOIA notice to its every informal communication with the government or else waive its right to intervene in FOIA proceedings years later.[2]

---

[1] To clarify a comment made by the undersigned at the recent court conference (July 23 Tr. at 15-16), the subpoenas described here covered the vast majority of documents produced by JSTOR in the Boston Case, but not all the documents. Early on in the government's investigation, JSTOR produced to the USAO its template publisher licensing agreement and its Terms and Conditions of Use without a subpoena, and it is possible that a few other documents were also produced without a subpoena. Suppl. Guthrie Decl. ¶ 4, n.1.

[2] While the applicability of particular FOIA exemptions to particular documents is not yet before the Court in this matter, it is worth noting that FOIA provides a number of exemptions for communications with law enforcement. *See* 5 U.S.C. § 552(b)(7). These exemptions have

In sum, JSTOR was not obligated to specifically assert FOIA exemptions under 6 C.F.R. § 5.8 when it was not actually submitting any documents to DHS and when a reasonable expectation of confidential treatment attached under grand jury rules, under the protective order in the Boston Case, and in light of fairness and common sense.  In any event, the DHS regulations – to the extent applicable – allow for JSTOR to assert confidential treatment at a "reasonable time" after submission.  6 C.F.R. § 5.8(c).  There accordingly can be no doubt that intervention is timely.[3]

### B.   DHS Cannot Be Expected To Adequately Protect JSTOR's Interests

The standard for whether the government can adequately protect a private party's interest in a FOIA case liberally favors the private party, and that principle supports allowing intervention by JSTOR here.  *See Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007) ("There is good reason in most cases to suppose that the applicant is the best judge of the representation of his own interest and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties.") (citation and quotation marks omitted).

DHS cannot be expected to recognize the confidentiality issues in these documents as readily as JSTOR can.  At stake here are specific details such as the names of JSTOR's

---

been construed to favor confidentiality of investigative proceedings that, if disclosed, might deter witnesses from interacting with law enforcement.  *See*, *e.g.*, *Fund for Constitutional Gov't v. Nat'l Archives & Records Service*, 656 F.2d 856, 866-70 (D.C. Cir. 1981).  Multiple specific exemptions might apply here, including without limitation Exemption 3 for grand jury materials, as noted above; Exemption 4, which applies to confidential business information; and Exemption 7(c), which applies to records or information that could constitute an unwarranted invasion of personal privacy.  *See* 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 765 (1989) ("disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind").

[3] To be clear, although JSTOR was never a "submitter" in the ordinary sense of that word, if the Court determines that 6 C.F.R. § 5.8 applies in these circumstances then JSTOR will assert all the protections due to a "submitter" under the regulations.

4

employees and technical details about its computer systems – things that will stand out to a JSTOR reviewer, but may not be obvious to a DHS reviewer.  Suppl. Guthrie Decl. ¶ 7.  Where an entity such as JSTOR is so well-situated to protect its own interests, intervention is appropriate.  *See, e.g.*, *Bass v. Richardson*, 338 F. Supp. 478, 492 (S.D.N.Y.1971) (intervention allowed where applicants' "intimate knowledge" of facts put them in a "unique position to inform the Court as to the factual matters with which it must deal in deciding this case, and also to succinctly present and protect their position").

### C. JSTOR's Intervention Will Promote Prompt Release Of The Documents

Plaintiff's only objection to permissive intervention is that JSTOR's intervention purportedly will cause undue delay – an objection that lacks any merit. (Plaintiff's Notice at 6-7).  Plaintiff focuses on delay that has occurred in the past, and does not identify any delay that might result from JSTOR's intervention.  Any potential delay that may result from JSTOR's intervention will be minimal, and is outweighed by the interests of JSTOR in protecting staff privacy and network sensitivity.

Notably, even without intervention, it is common for agencies to share documents with affected private parties in order to get their help in identifying information that should be redacted prior to release.  *See*, *e.g.*, *In Defense of Animals v. United States Dep't of Agric.*, 656 F. Supp. 2d 68, 70 (D.D.C., 2009) (prior to any intervention, USDA sent nearly 2400 pages of documents to affected private party "to obtain [its] views as to whether such records were exempt from disclosure under FOIA Exemption 4").[4]  Rather than allowing such a process to occur privately, intervention will guarantee that JSTOR's review of the documents takes place on

---

[4] The court in *In Defense of Animals* ultimately allowed the private party to intervene and did not sustain the limitations on release that were asserted by the private party.  656 F. Supp. 2d at 70.  This confirms that intervention and assessment of the merits under FOIA are two different issues.

5

a court-ordered schedule and subject to judicial scrutiny.  JSTOR is committed to working with Defendant to identify appropriate redactions quickly and efficiently.

Contrary to Plaintiff's contention (Plaintiff's Notice at 9), JSTOR does not assert any authority to "dictate" redactions to DHS.  Just the opposite:  as a matter of law the final decision as to what should be redacted of course lies with DHS and, ultimately, with the courts.  In the interest of efficiency, JSTOR did propose in its motion papers that it should be allowed to make the redactions in the first instance.  JSTOR would be equally satisfied with a procedure in which it proposes redactions to DHS rather than making the redactions itself.

## II.     Alternatives to Intervention Are Inappropriate

### A.     Granting JSTOR *Amicus Curiae* Status Is Not Supported Here

Plaintiff's suggestion that JSTOR could participate as *amicus curiae* (Plaintiff's Notice at 8) lacks merit.  Common experience teaches that *amicus* status is meant for entities that seek to influence a case for public policy or industry reasons.  *See*, *e.g.*, Law.com Legal Dictionary, http://dictionary.law.com/Default.aspx?selected=2400 <last visited July 30, 2013> (*amicus* status is for a person or organization "interested in an issue" in a matter where the litigants with a direct stake are separately represented; e.g., the American Civil Liberties Union in a constitutional rights case or Friends of the Earth or the Sierra Club in an environmental case).  Entities like JSTOR that have a direct stake in a dispute are parties or intervenors, not *amici*.  Importantly, in the (we hope unlikely) event of a dispute about whether a particular redaction should be made, as an intervenor JSTOR would be in position to protect its interests by promptly presenting that dispute to the Court.  *Amici* have no such authority.  *See U.S. v. Michigan*, 940 F.2d 143, 166 (6th Cir. 1991) (unlike an *amicus*, "[o]nly a named party or ***an intervening real party in interest*** is entitled to litigate on the merits") (emphasis added).

6

The cases cited by Plaintiff where courts have denied applicants' motions to intervene, but allowed them to participate as *amicus curiae*, are distinguishable because in those cases the proposed intervenors had not satisfied all of the elements to intervene as of right under Fed. R. Civ. P. 24(a), and their intervention would have caused undue delay within the meaning of Fed. R. Civ. P. 24(b). *See District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 233, 236 (D.D.C. 2011) (denying intervention for purpose of opposing consent decree where disposition of action would not impair or impede proposed intervenors' ability to protect interests and where intervention would undermine benefit of entering consent decree for settling parties—"namely, minimizing litigation"); *Seminole Nation v. Norton*, 206 F.R.D. 1, 9, 11 (D.D.C. 2001) (Kollar-Kotelly, D.J.) (denying intervention where proposed intervenor's rights were adequately represented by defendant and where proposed intervenor sought to broaden scope of lawsuit which would delay the adjudication of discrete issues presented by original parties). JSTOR should not be designated as *amicus curiae* where it has demonstrated the appropriateness of intervention.

### B.     A Reverse-FOIA Action Is Not The Appropriate Alternative

A reverse-FOIA action (July 23 Tr. 18:5-9) is not the appropriate course in these circumstances, for at least two reasons.

<u>First</u>, reverse-FOIA cases typically involve a challenge by a classic "submitter of information—usually a corporation or other business entity required to report various and sundry data on its policies, operations or products[.]" *See CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1133 n.1 (D.C. Cir. 1987). As noted above, JSTOR reserves all rights to proceed as a "submitter" under the law if necessary, but it is hardly a typical "submitter" in point of fact. Having been brought into these events involuntarily, it seeks only to promote scrutiny of the events without putting its people or systems at further risk.

7

Second, while a reverse-FOIA challenge might well be ripe as to the limited determinations that DHS may have made to date, DHS has neither finished processing all of the documents at issue here nor made a final determination to release or hold back the information at stake. Since it is unclear whether JSTOR could file a reverse-FOIA action at least as to those documents for which DHS has not yet made final decisions, the ultimate release of the documents could be delayed further by use of the reverse-FOIA mechanism. JSTOR supports prompt access to information about the Aaron Swartz matter, as confirmed by its voluntary release today of its own documents in redacted form. Suppl. Guthrie Decl. ¶ 7; http://docs.jstor.org/ <last visited July 30, 2013>. Intervention would allow JSTOR to participate cooperatively in DHS's assessment of the documents on a rolling basis.[5]

---

[5] Forcing JSTOR into the position of plaintiff in a reverse FOIA litigation also simply would not accurately capture the nature of JSTOR's interest. JSTOR exists to promote access to information, and supports access to the records at issue here. It would be incongruous at best to force JSTOR into a position of even nominal "opposition" to the release of records, when in reality all JSTOR seeks are very limited redactions.

**Conclusion**

For the foregoing reasons and for the reasons set forth in its prior papers, JSTOR respectfully requests that the Court grant its motion to intervene.

Dated: July 30, 2013

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

 */s/ Bruce E. Yannett*
  By: Bruce E. Yannett [D.C. Bar # 416306]
   Jeremy Feigelson (admitted pro hac vice)
   Jared I. Kagan (admitted pro hac vice)

919 Third Avenue
New York, New York 10022
(212) 909-6000
beyannett@debevoise.com
jfeigels@debevoise.com
jikagan@debevoise.com

*Counsel for Non-Party and Proposed Intervenor Ithaka Harbors, Inc. d/b/a JSTOR*