UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**KEVIN POULSEN**
520 Third Street, Suite 305
San Francisco, CA 94107

                        Plaintiff,

                         Case No:  13-cv-00498(CKK)

                        v.

**DEPARTMENT OF HOMELAND SECURITY**
Washington, DC 20258

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SUPPLEMENTAL DECLARATION OF KEVIN GUTHRIE

Kevin Guthrie declares:

1. I am President of Ithaka Harbors, Inc., the not for profit organization that operates the JSTOR digital library ("JSTOR"). I submit this declaration on personal knowledge to supplement my July 16, 2013 declaration in this matter in support of JSTOR's motion to intervene.

2. JSTOR would like to see the Secret Service files on Aaron Swartz released to the public, in order to increase public knowledge about the government's investigation and prosecution of Mr. Swartz. At the same time, JSTOR would like certain details about our people and our computer systems to be redacted for reasons of safety and security.

3.     The documents and information that we are concerned about fall into three categories:  produced documents, records of informal communications, and documents generated by the government.

4.     <u>Produced Documents.</u>  Nearly all of the documents that JSTOR produced in the Boston case were produced pursuant to subpoena and with an expectation on our part that the documents would be treated as confidential.  These documents include names of JSTOR employees, and technical details about computer systems, that we believe should be redacted prior to public release.  More specifically:  In early 2011, a grand jury in the District of Massachusetts issued three subpoenas to JSTOR in connection with the government's investigation and prosecution of Aaron Swartz (the "Boston Case").  In response, JSTOR produced emails regarding the downloading events that gave rise to the Boston Case.  We expected these emails to be treated as confidential, based on our understanding that grand jury proceedings are ordinarily secret under federal law.  On November 30, 2011, the court in the Boston Case entered a protective order.  JSTOR later received a number of trial subpoenas from the U.S. Attorney's Office for the District of Massachusetts ("USAO").  The trial subpoenas requested certain summaries of computer usage in connection with the events of the Boston Case.  We produced documents in response to the trial subpoenas.  We marked these productions as confidential pursuant to the protective order.[1]

---

[1]   I am aware of two documents – a template publisher license agreement and JSTOR's Terms and Conditions of Use – that we provided to the USAO without a subpoena in response to an initial inquiry.  It is possible there were a small number of other such documents provided on a one-off basis without a subpoena.

2

5.      <u>Informal communications.</u>  From time to time in the Boston Case, JSTOR and its counsel also communicated with the government about the case by phone and email.  This happened when, for example, the government sought to interview JSTOR employees or to confirm scheduling matters.  We have never seen the Secret Service's files, but since the Secret Service was the lead investigative agency in the Boston Case, we believe the Secret Service files likely contain some of the sensitive information that was part of these informal communications.  For example, the Secret Service might have copies of scheduling emails that reference individuals at JSTOR by name; notes of interviews of JSTOR witnesses; and notes or correspondence that include technical details about our systems.  When having these informal communications, it was always JSTOR's expectation that the government would treat them as confidential.  These communications occurred before Aaron Swartz committed suicide.  The events following his suicide have added to JSTOR's concern about privacy and safety issues.

6.      <u>Documents generated by the government.</u>  Given the nature of the investigation, we expect that the government also created other documents we have never seen that discuss JSTOR's personnel and its systems.  Examples would include intra-agency memos or emails of the Secret Service and interagency communications between the Secret Service and the USAO.

7.      Since my prior declaration, JSTOR has continued to prepare its documents for voluntary public release.  We also have been working with the USAO and MIT to redact the documents from the Boston Case and prepare them for public release, as required by Judge Gorton's order in that case.  Based on this experience, we know it is

not always obvious what information might need to be redacted. For example, technical information that may expose system vulnerabilities would best be identified by JSTOR's technical staff. Likewise, it may not always be obvious whether any given name in a document is that of a JSTOR employee. Accordingly, I believe that JSTOR has unique knowledge, and experience with the redaction process, that puts it in the best position to efficiently identify what information in the Secret Service's files should be redacted.

[signature page follows]

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of July 2013 in Ann Arbor, Michigan.

*[signature]*
Kevin Guthrie