**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEVIN POULSEN,<br><br>                Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>                Defendant,<br><br>  and<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY AND ITHAKA HARBORS, INC., D/B/A JSTOR,<br><br>                Movants for Intervention. | Case No. 13-0498 (CKK) |

**THE MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S SUPPLEMENT TO ITS MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANT**

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................1

I. MIT'S MOTION TO INTERVENE IS TIMELY .......................................................1

   A. MIT's Interest in Protecting the MIT Confidential Information From Public Disclosure Has Been Made Clear to DHS ...............................................................1

   B. Although the U.S. Attorney's Office in Boston Has Afford MIT a Reasonable Review Process in U.S. v. Swartz, In this FOIA Case DHS Has Not Yet Afforded MIT a Similar Opportunity ........................................................................................4

II. INTERVENTION IS APPROPRIATE AND PREFERABLE BECAUSE REQUIRING MIT TO FILE A SEPARATE ACTION WOULD ONLY DELAY DISCLOSURE FURTHER ........................................................................................6

   A. The Availability of "Reverse FOIA" Litigation Demonstrates Intervention is Proper; It Does Not Preclude Intervention ................................................................6

   B. Intervention Is Preferable for Reasons of Judicial Economy and for Preservation of the Parties' Resources ............................................................................................9

CONCLUSION ...................................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AFL-CIO v. FEC*,
   333 F.3d 168 (D.C. Cir. 2003) ....................................................................................................7

*Airline Pilots Ass'n. Int'l v. FAA*,
   552 F. Supp. 811 (D.D.C. 1982) .................................................................................................8

*Alliance for Clean Energy v. U.S. Dep't of Energy*,
   853 F. Supp. 2d 60 (D.D.C. 2012) ..............................................................................................3

*Allnet Commc'ns Servs., Inc. v. FCC*,
   800 F. Supp. 984 (D.D.C. 1992) .................................................................................................8

*Appleton v. FDA*,
   310 F. Supp. 2d 194 (D.D.C. 2004) ............................................................................................8

*Battle v. FAA*,
   393 F.3d 1330 (D.C. Cir. 2005) ..................................................................................................4

*Campaign for Family Farms v. Glickman*,
   200 F.3d 1180 (8th Cir. 2000) ....................................................................................................7

*Cortez III Serv. Corp. v. National Aeronautics and Space Admin.*,
   921 F. Supp. 9 (D.D.C. 1996) .....................................................................................................7

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   93 F. Supp. 2d 1 (D.D.C. 2000) .................................................................................................8

*Durnan v. U.S. Dep't of Commerce*,
   777 F. Supp. 965 (D.D.C. 1991) .................................................................................................8

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998) ..................................................................................................8

*ERG Transit Sys. Inc. v. Washington Metro. Area Transit Auth.*,
   593 F. Supp. 2d 249 (D.D.C. 2009) ............................................................................................9

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
   445 U.S. 375 (1980) ....................................................................................................................9

*Gulf & W. Indus. v. U.S.*,
   615 F.2d 527 (D.C. Cir.1979) .....................................................................................................2

*Ivanhoe Citrus Ass'n v. Handley*,
   612 F. Supp. 1560 (D.D.C. 1985) ...............................................................................................9

*Judicial Watch v. Dep't of Army*,
    466 F. Supp. 2d 112 (D.D.C. 2006) ..................................................................................8

*Jurewicz et al. v. Dep't of Agriculture*,
    11-cv-00707 (D.D.C. August 1, 2011) (JEB) ..................................................................10

*Nat'l Bus. Aviation Ass'n, Inc. v. FAA*,
    686 F. Supp. 2d 80 (D.D.C. 2010) ....................................................................................9

*Nw. Coal. for Alternatives to Pesticides v. Browner*,
    941 F. Supp. 197 (D.D.C. 1996) .......................................................................................8

*Parker v. Bureau of Land Mgmt.*,
    141 F. Supp. 2d 71 (D.D.C. 2001) ....................................................................................8

*Recitel Foam Corp. v. U.S. Dep't of Justice*,
    No. 98-2523, slip op. (D.D.C. Jan. 31, 2002) (GK), *appeal dismissed*, No. 02-5118
    (D.C. Cir. Apr. 25, 2002) ..................................................................................................7

*Reliance Electric Co. v. Consumer Prod. Safety Comm'n*,
    924 F.2d 274 (D.C. Cir. 1991) ..........................................................................................7

*Sears, Roebuck & Co. v. Gen. Servs. Admin.*,
    553 F.2d 1378 (D.C. Cir. 1977) ........................................................................................9

*United Space Alliance v. Solis*,
    824 F. Supp. 2d 68 (D.D.C. 2011) ....................................................................................4

**OTHER AUTHORITIES**

6 C.F.R. § 5.8 ........................................................................................................... *passim*

6 C.F.R. § 5.30 ..................................................................................................................5

The Massachusetts Institute of Technology ("MIT") does not oppose the public release of the documents at issue in Plaintiff Kevin Poulsen's complaint, as may be required under the Freedom of Information Act.  Indeed, MIT today voluntarily released a significant number of its own documents pertaining to the government's prosecution of Aaron Swartz, subject only to very limited and responsible redactions designed to protect the very same interests that MIT seeks to safeguard through intervention here.[1]

MIT has moved to intervene in this case for the limited purpose of protecting the confidentiality of portions of documents and information that either (1) reflect the names or other personal identifying information of employees and other members of the MIT community or (2) reference or describe potential vulnerabilities in MIT's computer networks (collectively the "MIT Confidential Information").  As Mr. Poulsen concedes (Pl. Notice at 3), MIT has an interest in ensuring that this limited information is properly redacted.  That interest is to make certain that its community members are safe and that its computer networks are protected.  MIT has made its interest in protecting the MIT Confidential Information from disclosure clear to the Department of Homeland Security ("DHS") and has filed a timely and appropriate motion to intervene.  Intervention is proper and is the most appropriate and expeditious method of resolving these issues and releasing the documents.

## ARGUMENT

**I.    MIT'S MOTION FOR INTERVENTION IS TIMELY.**

    **A.    MIT's Interest in Protecting the MIT Confidential Information from Public Disclosure Has Been Made Clear to DHS.**

---

[1] *See* Report to the President: MIT and the Prosecution of Aaron Swartz, Released Documents, *available at* http://swartz-documents.mit.edu.

1

MIT has manifested an expectation that DHS should refrain from disclosing the MIT Confidential Information, which MIT provided in connection with law enforcement's investigation into allegedly unlawful downloading of JSTOR articles that occurred using MIT's network. The majority of this information was submitted to United States Attorney's Office in Boston ("USAO"). Much of this information was submitted to USAO in response to grand jury subpoenas and thus under the auspices of grand jury confidentiality; additional information was provided to the USAO during the pre-trial phase in *U.S. v. Swartz*, where MIT was aware that a non-disclosure order was in place. *See* Protective Order, *United States v. Swartz*, 11-cr-10260 (D. Mass. Nov. 30, 2011) (attached as Exhibit A). At the time MIT submitted documents in response to the grand jury subpoenas, it included cover letters that requested that the USAO provide the same protections relating to confidentiality and non-disclosure that are routinely provided by the USAO for documents produced in response to grand jury subpoenas.

Particularly in the early stages of the investigation, when MIT was assisting law enforcement in responding to a network intrusion of unknown scope, MIT did provide some records and information to law enforcement outside the auspices of a grand jury subpoena. MIT employees also engaged in email communications with law enforcement in order to respond to questions that law enforcement had regarding the nature of the intrusion. MIT believes that the sensitive nature of this information ought to be apparent to DHS; most of these early submissions related to MIT's network. MIT expects that still other information provided by MIT—whether pursuant to a grand jury subpoena or otherwise—has likely been incorporated into internal

government documents, which by definition MIT never had the opportunity to designate as confidential.[2]

More recently, MIT has further manifested its interests in protecting the MIT Confidential Information through its intervention and participation in the proceedings in federal district court in Massachusetts regarding the modification of the protective order in the *U.S. v. Swartz* case. Those actions have resulted in a collaborative process with the USAO for protecting the MIT Confidential Information in much the same way that MIT seeks to achieve through its intervention in this case.

To eliminate any possible doubt on the part of DHS regarding MIT's continuing interest in non-disclosure of any and all MIT Confidential Information that falls within the scope of Mr. Poulsen's FOIA request and lawsuit, on July 26, 2013, MIT submitted a letter to DHS in which it formally requested that DHS and the Secret Service treat all such information as subject to the protections provided by DHS's submitter notice regulations, 6 C.F.R. § 5.8. *See* July 26, 2013 Letter to the Department of Homeland Security et al. (attached as Exhibit B).[3] This letter simply reiterated what was already clear: that MIT expected DHS and the Secret Service to treat MIT-submitted information as confidential in the same manner as has DOJ in *U.S. v. Swartz*.

---

[2] MIT's expectation of confidentiality covers not only MIT's information in the form in which it was originally submitted to the government, but also any agency-created documents that contain information derived from MIT submissions. *See Alliance for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 67 (D.D.C. 2012) ("[P]ortions of agency-created records may be exempt [from disclosure] if they contain information that was either supplied by a person outside the government or that could permit others to 'extrapolate' such information." (quoting *Gulf & W. Indus. v. U.S.,* 615 F.2d 527, 529–30 (D.C. Cir.1979))).

[3] DHS's submitter notice regulations permit such a designation to be made "either at the time of [the records'] submission or at a reasonable time thereafter." 6 C.F.R. § 5.8(c). Although MIT submitted its letter to avoid any doubt about its position with regard to these documents, MIT nonetheless believes that its designation now would be timely, particularly in light of the increased privacy and security concerns that have arisen since Mr. Swartz's suicide in January 2013 and subsequent hacks and threats against MIT.

> **B.  Although the U.S. Attorney's Office in Boston Has Afforded MIT a Reasonable Review Process in *U.S. v. Swartz*, In This FOIA Case DHS Has Not Yet Afforded MIT a Similar Opportunity.**

"Business information obtained by the Department from a submitter will be disclosed under the FOIA, if otherwise allowable, *only* under [6 C.F.R. § 5.8]."  6 C.F.R. § 5.8(a) (emphasis added).  DHS regulations require that the agency provide the submitter with notice and an opportunity to object to disclosure under applicable FOIA exemptions and other laws.  DHS is required to provide this notice and opportunity "if the component has reason to believe that the information may be protected from disclosure under Exemption 4," whether or not the submitter previously designated the information as confidential.  For this reason, even if (contrary to fact) MIT had never previously sought confidential treatment of the information at issue, MIT would still have an entitlement to the review process it seeks in this case because at this point DHS certainly has a reason to believe the information "may be protected."  DHS, however, has not yet provided the process spelled out in its regulations, and "'agencies may not violate their own rules and regulations to the prejudice of others.'"  *United Space Alliance v. Solis*, 824 F. Supp. 2d 68, 82 (D.D.C. 2011) (quoting *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005)).

MIT intervened in this action because DHS has to date not treated MIT as a submitter[4] and afforded it the processes called for in 6 C.F.R. § 5.8.  In view of the manner in which the information was submitted, the nature of the information submitted, and the government's involvement in the *U.S. v. Swartz* litigation in Massachusetts, DHS unquestionably has reason to believe that MIT expected confidential treatment of its information.  To avoid any doubt, MIT

---

[4]  Section 5.8(a)(2) defines "submitter" as "any person or entity from whom the Department obtains business information, *directly or indirectly*." (Emphasis added).  Thus, even if DHS had obtained all the information it currently possesses from the USAO, which it did not, MIT would nonetheless be a submitter under DHS regulations.

has now submitted a notice to the agency informing it of that expectation. DHS therefore has an obligation under 6 C.F.R. § 5.8(d) to provide MIT with either a description of or copies of the FOIA-requested MIT Confidential Information. *See* 6 C.F.R. § 5.8(d) ("The notice shall either describe the business information requested or include copies of the requested records or record portions containing the information."). DHS must also afford MIT an opportunity to object to disclosure—on the basis of "any exemption of the FOIA," *id.* § 5.8(f)—and consider MIT's objections and grounds for disclosure.[5]

DHS has not provided MIT with this process in connection with Mr. Poulsen's FOIA request.[6] After MIT became aware of this Court's July 5, 2013 Order directing DHS to begin releasing responsive records to Mr. Poulsen, counsel for MIT engaged with counsel for DHS to request that MIT be afforded the opportunity to review MIT Confidential Information and suggest appropriate redactions. DHS did not provide MIT with this opportunity, and counsel for DHS informed MIT on July 17, 2013 that DHS could begin releasing records as soon as July 19, 2013, threatening potentially irreversible harm to MIT if the MIT Confidential Information were not properly redacted. MIT therefore moved expeditiously to protect its interests by intervening

---

[5] Specifically, § 5.8(f) provides that "a component will allow a submitter a reasonable time to respond to the notice" and § 5.8(g) states that "a component shall consider a submitter's objections and specific grounds for nondisclosure." 6 C.F.R. § 5.8 (f) & (g).

[6] For example, MIT did not receive the "prompt written notice" of Mr. Poulsen's FOIA request required by 6 C.F.R. § 5.8(d). Nor did DHS provide notice to MIT when Mr. Poulsen filed the instant action. *See* 6 C.F.R. § 5.8(i) ("Whenever a requester files a lawsuit seeking to compel the disclosure of business information, the component shall promptly notify the submitter."). Furthermore, to the extent that DHS intends to disclose records pertaining to individual members of the MIT community, it appears that DHS is also required to provide notice to these individuals. DHS's regulations provide that "[w]hen a record pertaining to an individual is required to be disclosed by a court order, the component shall make reasonable efforts to provide notice of this to the individual." 6 C.F.R. § 5.30. Although currently stayed, when originally entered, the Court's July 5, 2013 Order, would appear to provide sufficient basis under the regulations for DHS to notify members of the MIT community pursuant to section 5.30. To MIT's knowledge, no members of the MIT community have received such notice.

in the present action on July 18, 2013, because it appeared that DHS was about to commence disclosures without affording MIT the protections provided under 6 C.F.R. § 5.8 and other laws.

MIT moves to intervene now to challenge that agency action in light of the irreversible harm that could result from a release of information that threatens the safety of its employees or the security of its network. Further, plaintiff's argument that MIT's motion is not timely because it had not formally designated under 6 C.F.R. § 5.8 fails to take into account both MIT's manifestation of an expectation of privacy in the information at issue and the requirement that the agency provide this process whenever it has "reason to believe the information may be protected," even in the absence of formal designation. DHS's position became clear to MIT only in the days before intervention; as such, it only then had a ripe conflict with the agency and moved timely to intervene to protect its interests.

## II. INTERVENTION IS APPROPRIATE AND PREFERABLE BECAUSE REQUIRING MIT TO FILE A SEPARATE ACTION WOULD ONLY DELAY DISCLOSURE FURTHER.

Where the movant for intervention has demonstrated an interest in the information to be disclosed—an issue Mr. Poulsen does not dispute (Pl. Notice at 3)—this Court has granted intervention to allow submitters to assert that interest. Allowing intervention in this case is well within the established framework for FOIA litigation that allows submitters to assert their interests before documents are disclosed. While MIT could file a so-called "reverse FOIA" action to challenge DHS's decision to deny it the opportunity to review and propose redactions, intervention in an already-existing action regarding those same records is both appropriate and best suited to promoting the interests of judicial economy.

### A. The Availability of "Reverse FOIA" Litigation Demonstrates Intervention Is Proper; It Does Not Preclude Intervention.

In so-called "reverse FOIA" cases, "district courts have jurisdiction to hear complaints brought by parties claiming that an agency decision to release information adversely affects them." *Cortez III Serv. Corp. v. National Aeronautics and Space Admin.*, 921 F. Supp. 9, 11 (D.D.C. 1996) (citing *Reliance Electric Co. v. Consumer Prod. Safety Comm'n*, 924 F.2d 274, 277 (D.C. Cir. 1991)). As demonstrated above, MIT was entitled to receive—but has not been afforded—the protections of DHS's submitter notice regulations; on that basis, MIT could have filed a separate action under the Trade Secrets Act, the Privacy Act, and the Administrative Procedures Act to challenge DHS's decision to commence disclosing documents without affording MIT those protections. A district court could adjudicate such an action because DHS's decision to release the documents without providing MIT with the opportunity to review and object to the disclosure of information "adversely affects" MIT. That MIT *could* file a "reverse FOIA" action does not preclude it from intervening in this action; indeed, it confirms that MIT meets the requirements of intervention.

Reverse FOIA actions are routinely filed in order to protect against the release of specific information that could harm third parties. *See AFL-CIO v. FEC*, 333 F.3d 168, 172 (D.C. Cir. 2003) (submitter organization challenging decision to disclose names of individuals in investigatory file); *Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1187-89 (8th Cir. 2000) (submitter organization challenging decision to disclose the names and addresses of individuals signing referendum petition); *Recitel Foam Corp. v. U.S. Dep't of Justice*, No. 98-2523, slip op. at 9-10 (D.D.C. Jan. 31, 2002) (GK) (submitter organization challenging decision to disclose FBI investigatory file), *appeal dismissed*, No. 02-5118 (D.C. Cir. Apr. 25, 2002). While it is true that many reverse FOIA actions are filed after the agency and the third-party submitter have completed the submitter notice process and reached a disagreement regarding the

appropriateness of any proposed redactions, such actions are filed under the APA in order to challenge a final agency decision. Here, the final agency decision being challenged is DHS's failure—as of the time it was about to begin disclosing records on July 19—to afford MIT a protective process to which it is entitled.

That MIT could file a separate reverse FOIA action against DHS more than demonstrates that it has an interest in this action (which Mr. Poulsen concedes), that its interest would be harmed by the release of records without appropriate redactions, and that DHS does not adequately represent MIT's interests. Further, if MIT were to pursue a separate reverse FOIA action, it would be advancing a claim or defense that shares common questions of law and fact with Mr. Poulsen's FOIA action. Where, as here, such litigation already exists, intervention is appropriate because it advances the "goal of disposing of related controversies together." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998).[7]

Indeed, had MIT filed a reverse FOIA action, Mr. Poulsen may well have sought to intervene in *that* action to ensure that his interests in public disclosure were adequately represented. For the same reasons MIT's motion to intervene in the present action is proper, Mr. Poulsen would likely have been permitted to intervene in any such reverse FOIA action, for this Court has also frequently allowed a FOIA requester to intervene in a reverse FOIA case. *See*

---

[7] Mr. Poulsen's assertion (Pl. Notice at 5) that granting intervention would "alter the decades-long norm in which two parties—the agency and the requester—are deemed to adequately represent the competing interests," is mistaken. This Court has frequently permitted those who submit information to the government that is later sought during FOIA litigation to intervene to protect their interest in such information. *See Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 124 (D.D.C. 2006); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004); *Parker v. Bureau of Land Mgmt.*, 141 F. Supp. 2d 71, 74 (D.D.C. 2001); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 3 (D.D.C. 2000); *Nw. Coal. for Alternatives to Pesticides v. Browner*, 941 F. Supp. 197, 199 (D.D.C. 1996); *Allnet Commc'ns Servs., Inc. v. FCC*, 800 F. Supp. 984, 985-986 (D.D.C. 1992); *Durnan v. U.S. Dep't of Commerce*, 777 F. Supp. 965, 966 (D.D.C. 1991); *Airline Pilots Ass'n Int'l v. FAA*, 552 F. Supp. 811, 812-13 (D.D.C. 1982).

*Sears, Roebuck & Co. v. Gen. Servs. Admin.*, 553 F.2d 1378, 1380 (D.C. Cir. 1977) (resolving reverse FOIA case with requestor granted intervention on behalf of the defendant-government); *Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, 686 F. Supp. 2d 80, 84 (D.D.C. 2010); *ERG Transit Sys. Inc. v. Washington Metro. Area Transit Auth.,* 593 F. Supp. 2d 249, 250 (D.D.C. 2009); *Ivanhoe Citrus Ass'n v. Handley*, 612 F. Supp. 1560, 1562 (D.D.C. 1985).  MIT has, as Mr. Poulsen concedes, a clear interest in the documents at issue in this action.  The availability of a reverse FOIA suit does not prevent MIT from intervening in this case.  On the contrary, it underscores that MIT meets the requirements for intervention here.

    **B.**  **Intervention Is Preferable for Reasons of Judicial Economy and for Preservation of the Parties' Resources.**

    Plaintiff has made clear that he seeks the public disclosure of the documents as soon as possible. Intervention is the optimal means to achieve the speedy disclosure of these documents in a manner that promotes and protects the interests of all concerned while also preserving judicial resources.  If MIT were to file a reverse FOIA action, it would have to seek a preliminary injunction barring release of documents pending the outcome of that matter.  Timeframes for filing answers and dispositive motions would start from the beginning of that action.  Even if Mr. Poulsen were to prevail in this action, DHS would be unable to release the documents until the reverse FOIA action was resolved.  *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,* 445 U.S. 375, 384-387 (1980) (holding that an agency properly withheld documents because the agency was complying with a court order that mandated non-disclosure pending the resolution of a reverse FOIA action).  In short, requiring the filing of a separate action would only increase the time and resources it takes to resolve these issues.  Such a delay would disserve both the parties and the public.

The recent case of *Jurewicz v. Department of Agriculture* provides a template for resolving this controversy without a multiplicity of litigation. 891 F. Supp. 2d 147 (D.D.C. 2012). In *Jurewicz*, the Humane Society, similarly to Mr. Poulsen, filed a FOIA request for information provided to the United States Department of Agriculture (the "USDA") by dog breeders (i.e., the submitters). *Id.* at 151. After the USDA stated that it would redact certain information, the Humane Society brought a FOIA suit. *Id.* at 152. As that case proceeded, the USDA decided that no FOIA exemptions applied to justify redacting the documents. *Id.* The submitters then filed a reverse FOIA suit seeking to prevent disclosure of unredacted documents. *Id.* Four months later—and after the USDA filed an answer—the Humane Society moved to intervene as a defendant in the submitter's reverse FOIA suit and to consolidate the two cases. *Id*. By minute order, the court granted the Humane Society's motion to intervene and consolidated the cases. *See* Minute Order, *Jurewicz et al. v. Dep't of Agriculture*, 11-cv-00707 (D.D.C. August 1, 2011) (JEB). The case was then resolved with the submitters as plaintiffs, the USDA as defendant, and the Humane Society as defendant-intervenor. *Jurewicz v. Dep't of Agriculture*, 891 F. Supp. 147, 162 (D.D.C. 2012).

The resolution of *Jurewicz* demonstrates three principles: (1) that submitters may seek judicial relief from this court where potential disclosures by the government may affect their interests; (2) that where an action concerning those records already exists, intervention is appropriate for parties who have an interest in the documents subject to disclosure; and (3) that the most appropriate and efficient way to resolve disputes involving submitters, requestors, and the government is in one matter. A similar resolution of the present matter can be achieved without the added delay of a separate action. By granting MIT's Motion to Intervene, the parties can resolve any differences quickly and the public may have access to the documents.

**CONCLUSION**

For all of the foregoing reasons, and for the reasons previously stated in MIT's memorandum in support of its motion to intervene, this Court should grant MIT's Motion to Intervene.

By:   /s/ Patrick J. Carome
PATRICK J. CAROME (DC Bar No. 385676)
LAURA M. HUSSAIN (DC Bar No. 988151)
EMILY L. STARK (DC Bar No. 997020)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Patrick.Carome@wilmerhale.com
*Counsel for Movant for Intervention*
*Massachusetts Institute of Technology*

Dated:  July 30, 2013