**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KEVIN POULSEN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 13-0498 (CKK) |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

DAVID L. SOBEL
D.C. Bar No. 360418
5335 Wisconsin Ave., N.W., Suite 640
Washington, DC 20015
(202) 246-6180

Counsel for Plaintiff

# TABLE OF CASES

*Act Now to Stop War & End Racism Coalition v. District of Columbia*,
286 F.R.D. 145 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*American Petroleum Inst. v. EPA*, 72 F.3d 907 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . .   19

*Blum v. Stenson*, 465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Bolden v. J & R Inc.*, 135 F. Supp. 2d 177 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286
(D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . .   12

*Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*,
820 F. Supp. 2d 39 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*,
2014 U.S. Dist. LEXIS 182097 (D.D.C. Oct. 24, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*,
2015 U.S. Dist. LEXIS 16324 (D.D.C. Feb. 11, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . .   8

*Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11-14

*Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 216 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Elec. Privacy Info. Ctr. v. FBI*, 2014 U.S. Dist. LEXIS 156631
(D.D.C. Nov. 5, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013) . . . . . . . . . . . . . . . . . . . . . 16-19

*Fenster v. Brown*, 617 F.2d 740 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403
(3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163
(D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159
(D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225
(D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 16

*Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225
(D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . 15

*LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481
(D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704
(D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Negley v. FBI*, 818 F. Supp. 2d 69 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Northwest Coalition for Alternatives to Pesticides v. EPA*,
421 F. Supp. 2d 123 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Role Models America, Inc. v. Brownlee*, 353 F.3d 962
(D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Salazar v. District of Columbia ("Salazar I")*, 123 F. Supp. 2d 8
(D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Salazar v. District of Columbia ("Salazar II")*, 750 F. Supp. 2d 70
(D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Salazar v. District of Columbia ("Salazar III")*, 991 F. Supp. 2d 39
(D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. District of Columbia*, 466 F. Supp. 2d 151 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . 16, 20

*Summers v. Dep't of Justice*, 477 F. Supp. 2d 56 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . 15

*Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092 (D.C. Cir. 1992) . . . . . . . . . . . . . . . 10, 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **KEVIN POULSEN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 13-0498 (CKK) |
| | ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

Plaintiff Kevin Poulsen, a professional, full-time journalist, initiated this action under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on April 12, 2013, seeking the disclosure

of records maintained by the U.S. Secret Service, a component of defendant Department of

Homeland Security ("DHS"), specifically records concerning the agency's investigation of the

late Internet activist Aaron Swartz.  As a direct result of these proceedings, the agency released a

substantial amount of previously withheld information shedding light on an investigation and

prosecution that was the subject of considerable public interest and news media attention. The

clear nexus between plaintiff's litigation of this matter and the agency's disclosure of the

requested information establishes plaintiff's eligibility for an award of attorneys' fees and costs.

As demonstrated below, plaintiff is both eligible for fees and entitled to fees under the four-

factor balancing test this Circuit applies.

**FACTUAL BACKGROUND**

A.       **Plaintiff's Request and the Commencement of Litigation**

By letter to the Secret Service dated January 14, 2013, plaintiff requested under the FOIA

copies of agency records.  Specifically, plaintiff requested "any documents held by the U.S.

Secret Service concerning Aaron Swartz."  Plaintiff noted that "Mr. Swartz passed away on January 11, 2013," and attached to the request a copy of Mr. Swartz's newspaper obituary, which appeared in the Chicago Tribune on January 13, 2013.  Complaint (ECF No. 1), ¶ 5; Answer (ECF No. 27), ¶ 5.

By letter to plaintiff dated February 26, 2013, the Secret Service issued its initial determination to deny plaintiff's FOIA request.  The agency stated that "[p]ursuant to 5 U.S.C. 552(B)(7)(A)," the information plaintiff requested "is being exempted since disclosure could reasonably be expected to interfere with enforcement proceedings."  The Secret Service advised plaintiff of his right to submit an administrative appeal of the agency's determination. Complaint, ¶ 6; Answer, ¶ 6.  By letter to the Secret Service dated March 1, 2013, plaintiff appealed the agency's initial determination to deny his request.  Complaint, ¶ 6; Answer, ¶ 6. Upon the agency's failure to respond to plaintiff's administrative appeal within the statutory time limit, plaintiff initiated this action on April 12, 2013.

**B.**     **Proceedings Before this Court and the Disclosure of Responsive Information**

Following service of process, defendant's response to the complaint was due to be filed no later than May 23, 2013 (ECF No. 7).[1]  Although counsel for defendant entered an appearance on May 2, 2013 (ECF No. 4), the agency did not timely respond to the complaint.  Instead, on June 20, 2013, defendant moved to respond to the complaint out of time (ECF No. 9).  Even then, the agency represented that it was "unable to propose a full briefing schedule for the disposition of this matter," and asserted that it was "now acquiring the information required to proffer such a proposed schedule, and intends to advise the Court and Plaintiff . . . as soon as possible and, in

---

[1]  Indeed, the summonses issued by the Court and served on the government expressly stated that, "Within 30 days after service of this summons on you . . . you must serve on the plaintiff an answer to the attached complaint . . . ."  ECF Nos. 1-2, 1-3 & 1-4.

any event, no later than July 3, 2013." Defendant's Memorandum of Points and Authorities in

Support of Corrected Motion to File Answer or Other Initial Response Out of Time (ECF No. 9-

1) at 2.

By minute order issued on June 20, 2015, the Court directed that "Defendant shall file its

Answer or other Initial Response to the Complaint not later than August 5, 2013." The order

emphasized, "NO FURTHER EXTENSIONS."

On July 3, 2013, defendant filed a status report (ECF No. 10) and stated, *inter alia*:

> Although Defendant intended on June 20 to propose a schedule for
> disposition of the case through the filing of a motion for summary judgment with
> an accompanying *Vaughn* index by July 3, it cannot do so now because it is still
> processing the records that may be responsive to Plaintiff's FOIA request.
> Defendant has exercised diligence in processing these records. As part of that
> effort, it undertook an additional search for responsive records in certain agency
> files, including files located outside agency headquarters in the Washington, D.C.
> area. Based on this additional search, it learned yesterday, July 2, of files located
> outside the agency's headquarters that contain several thousand additional pages
> that may be responsive to Plaintiff's FOIA request. Defendant's initial belief that
> it could submit a schedule for summary judgment briefing by July 3 was based
> upon a projected schedule for completing processing of the records and
> preparation of a *Vaughn* index that reflected a much smaller volume of records.
>
> The agency's review of those files will require a substantial amount of
> additional time. Defendant will continue to process potentially responsive records
> diligently. Should it determine that it cannot complete that process by August 5,
> it will file on or before that date an Answer to the Complaint in conformity with
> this Court's June 20 order . . . .

*Id*. at 1-2. By minute order dated July 5, 2013, the Court reiterated its earlier deadline for a

response to the complaint and ordered the agency, no later than August 5, 2013, to 1) file an

answer to the complaint; and 2) "file a proposed schedule for further proceedings, including

dates for: the completion of the release of all responsive documents; the production to Plaintiff of

a *Vaughn* Index . . .; and a briefing schedule that reflects discussions with Plaintiff's counsel."

The minute order concluded:

Further, the Court understands that Defendant has already gathered various records responsive to Plaintiff's request and is continuing to search for others. To the extent Defendant has not already done so, Defendant shall promptly release to Plaintiff all responsive documents that it has gathered thus far and shall continue to produce additional responsive documents that it locates on a rolling basis.

On July 18, 2013, the parties and the Court were informed of the intention of Massachusetts Institute of Technology ("MIT") to move to intervene in this action. As a result, by minute order issued that day, the Court stayed "the obligation of the Government to promptly release to Plaintiff all responsive documents that it has located on a rolling basis, . . . until further order of the Court." MIT filed a motion to intervene later that day (ECF No. 11), and Ithaka Harbors, Inc. d/b/a JSTOR did likewise on the following day (ECF No. 16).

While the proceedings that resulted from the filing of the motions to intervene are not germaine to the instant motion – plaintiff does not seek an award of fees for any work associated with the question of intervention – the telephone conference convened by the Court on July 23, 2013, is relevant. In light of the Court's order staying the agency's obligation to release responsive records in light of the pending motions to intervene, plaintiff's counsel emphasized that "one of Plaintiff's primary concerns here is the potential for further delay," noting that "[t]his FOIA request has been pending for six months." Transcript of Telephone Conference Hearing (ECF No. 43) at 28. The Court responded that, "[i]n terms of materials, as I've indicated, I don't want any delay with the collection, review processing, decisions . . . leaving aside any intervention. I don't want [the agency's] processing to be halted or in any way delayed at this point because of the pending intervention, because I haven't made a decision about it." *Id.* at 29. The Court reiterated that, "I want to make sure that [the agency is] continuing [processing] . . . I don't want that held up." *Id.* at 30-31. In a minute order issued the following day (July 24), the Court ordered, *inter alia*, that

by no later than AUGUST 5, 2013, Defendant shall file a status report indicating the following: (1) an estimated time frame for the completion of the collection and processing (including reviewing the documents for the applicability of FOIA exemptions) of what is estimated to be 8,000 remaining pages of responsive documents; (2) an estimated time frame for the review of the 131 previously processed documents for the purpose of determining whether there are any documents contained therein that do not implicate any of MIT and/or JSTOR's asserted interests such that they would be available for immediate release.

On August 5, 2013, defendant DHS filed its answer (ECF No. 27) and a status report (ECF No. 28), in which it stated, *inter alia*, that "the Secret Service has identified approximately 14,500 potentially responsive pages of material" and that "[t]he Secret Service's best estimate is that the processing of all of the material responsive to Plaintiff's request would take at least six months." *Id*. at 3.

On August 7, 2013, the Court issued a minute order which provided, *inter alia*, that 1) the agency file a status report every 45 days "regarding the progress of its collection and processing of documents potentially responsive to Plaintiff's FOIA request;" 2) the agency "shall promptly release" 104 documents previously identified as not concerning MIT or JSTOR, to the extent the material not covered by any FOIA exemptions; and 3) the agency "shall continue to review all processed documents for the purpose of determining whether there are any additional documents that do not implicate any of MIT and/or JSTOR's asserted interests and shall produce those documents to Plaintiff on a rolling basis."

On August 12, 2013, the Secret Service released 104 pages of material to plaintiff that were responsive to his FOIA request. Thereafter, the agency continued to release records periodically to plaintiff and filed status reports updating the Court on its search efforts and disclosures to plaintiffs. On November 17, 2014, the agency filed a status report (ECF No. 47) in which it stated that, "[t]he Secret Service believes that it has now processed all documents

responsive to Plaintiff's FOIA request and that the documents referenced [in the report] are the final documents to be released to Plaintiff in this case." *Id*. at 2.

In a series of joint status reports filed with the Court, *see* ECF Nos. 48-51, the parties advised the Court of their ongoing discussions to attempt to resolve the remaining issues in the case without the need for further litigation. During the course of those discussions, counsel for plaintiff identified a number of issues concerning the agency's withholding determinations that plaintiff intended to pursue as the litigation moved forward. These included the scope of material withheld by the agency under Exemption 5. *See*, *e.g.*, Memorandum from Peter Maier to David Sobel, January 16, 2015 (filed herewith as Exhibit A). Ultimately, as a result of the parties' discussions, the agency provided to plaintiff additional information. *See*, *e.g.*, Email from Jesse Cantrell to David Sobel, March 6, 2015 (filed herewith as Exhibit B) ("[t]he attached [40] pages contain information that was previously redacted under (b)(5) and which is now being released to you in full or in part"); Letter from Jesse Cantrell to David Sobel, May 4, 2015 (filed herewith as Exhibit C) ("I am attaching [9 pages] which contain information that was previously redacted under Exemption (b)(5).").

During the course of the litigation, the Secret Service released to plaintiff approximately 3,000 pages, 172 photographs and 11 videos responsive to his FOIA request.

**B.      The Widespread Dissemination of the Released Information**

As a result of the disclosure of information obtained through this case, plaintiff published articles concerning the government's investigation and prosecution of Aaron Swartz. *See, e.g.*, Kevin Poulsen, *First 100 Pages of Aaron Swartz's Secret Service File Released*, WIRED (August 12, 2013) (filed herewith as Exhibit D). As another news media outlet reported, "Swartz's legacy and untimely death continue to garner coverage nearly one year after his

passing — as evident most clearly by Poulsen's latest piece for Wired and the subsequent media attention that it has already generated: moments after Poulsen's latest finds were published online, the internet quickly erupted with chatter about the silent, 11-minute-long video of Swartz shot at the precise movement that made a federal case fall into place . . . ." *Video that led to Aaron Swartz's arrest released*, RT USA (December 4, 2013) (filed herewith as Exhibit E); *see also* Natasha Lennard, *Surveillance footage that busted Aaron Swartz released*, Salon.com (December 4, 2013) (filed herewith as Exhibit F).

Plaintiff has made available on a dedicated website (swartzfiles.com), all of the material he has obtained through this litigation, and has also posted all of the released videos on YouTube (www.youtube.com/playlist?list=PL11OBefj1HUaUAwSB7ADlH3b3ELI1guh3).

## ARGUMENT

### I.       AS A SUBSTANTIALLY PREVAILING PARTY, PLAINTIFF IS ELIGIBLE FOR AN AWARD OF FEES AND COSTS

The FOIA authorizes a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [the Act] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  With this attorney fee provision Congress intended:

> to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.

*Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (quotation marks omitted), quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977) (citing S. Rep. No. 98-854, at 17).

Congress amended the attorney fee provisions of the FOIA through the OPEN

Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524, 2525, to provide in

relevant part: "a complainant has substantially prevailed if the complainant has obtained relief

through either a judicial order, or an enforceable written agreement or consent decree; or a

voluntary or unilateral change in position by the agency, if the complainant's claim is not

insubstantial." *Id*. at § 4(a)(2), codified at 5 U.S.C. § 552(a)(4)(E)(ii).

Unquestionably, plaintiff here has substantially prevailed within the meaning of the

OPEN Government Act of 2007, making him eligible for a fee award.  Through this litigation –

and as a direct result of the directives of this Court – plaintiff obtained a substantial amount of

information the agency initially refused to disclose.  As the background to this matter makes

clear, the filing of this lawsuit and the resulting judicial intervention were necessary to compel a

change in the agency's behavior that inured to plaintiff's benefit, specifically the production of

requested records, making plaintiff a "substantially prevailing" party.  *See Davis v. U.S. Dep't of

Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) ("FOIA plaintiffs [are] eligible for a fee award if the

lawsuit substantially caused the agency to release the requested records."); *Burka v. U.S. Dep't of

Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (holding that party claiming

attorney's fees "must first establish eligibility by showing that the lawsuit was reasonably

necessary and the litigation substantially caused the requested records to be released"); *see also

Edmonds v. FBI*, 417 F.3d 1319, 1326-27 (D.C. Cir. 2005) ("substantially prevail" requirement

satisfied where plaintiff has "succeed[ed] on any significant issue in litigation which achieves

some of the benefit the parties sought in bringing the suit").

It is beyond dispute that plaintiff "obtained relief through . . . a judicial order," 5 U.S.C. §

552(a)(4)(E)(ii).  Beginning with its failure to respond to plaintiff's complaint within the

statutory time limit, the agency was inattentive to its obligations to address plaintiff's FOIA request in a timely manner.  On numerous occasions, it was necessary for the Court to reiterate its deadlines for the agency's completion of processing.  *See*, *e.g*., Minute Orders of July 5, 2013 ("Defendant shall promptly release to Plaintiff all responsive documents that it has gathered thus far and shall continue to produce additional responsive documents that it locates on a rolling basis"); July 24, 2013 ("by no later than AUGUST 5, 2013, Defendant shall file a status report indicating . . . an estimated time frame for the completion of the collection and processing . . . of what is estimated to be 8,000 remaining pages of responsive documents"); August 7, 2013 ("to the extent Defendant has determined that . . . 104 documents are not covered by any FOIA exemptions, Defendant shall promptly release those documents to Plaintiff"); August 29, 2013 ("the Court plans to hold Defendant to its estimated processing time").

The D.C. Circuit has held unequivocally that FOIA requesters are eligible for an award of fees and costs when their litigation efforts result in the disclosure of information more quickly than would have otherwise occurred.  *Edmonds,* 417 F.3d at 1324 ("Plainly, there is value to obtaining something earlier than one otherwise would.").  *See also Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) "before the [court order], the CIA was not under any judicial direction to produce documents by specific dates; the . . . order changed that by requiring the Agency to produce all 'responsive documents' by the specified dates"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225, 229 (D.D.C. 2011) (plaintiff eligible for fees where stipulation, "which [a] minute order approved, required DOJ to 'complete production' of responsive, non-exempt records by a certain date"); *Elec. Privacy Info. Ctr. v. FBI*, 2014 U.S. Dist. LEXIS 156631, *8 (D.D.C. Nov. 5, 2014) (plaintiff "eligible for attorneys' fees and costs because it

substantially prevailed by obtaining production of responsive documents pursuant to the Court's . . . Order, which approved the parties' stipulated production date").

It is also clear that information was disclosed during the course of the litigation as a result of a "unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). Subsequent to the agency's representation on November 17, 2014, that, "[t]he Secret Service believes that it has now processed all documents responsive to Plaintiff's FOIA request and that the documents referenced [in the status report] are the final documents to be released to Plaintiff in this case," ECF No. 47, the Secret Service made additional disclosures of previously redacted information as a direct result of objections raised by plaintiff. *See* Exhibits B & C, filed herewith.[2] Plaintiff is clearly eligible for an award of attorneys' fees and costs reasonably incurred in achieving that result.

## II.    PLAINTIFF IS ENTITLED TO AN AWARD OF FEES AND COSTS

Once eligible, a FOIA plaintiff must demonstrate its entitlement to a fee award. The D.C. Circuit has directed courts to employ a four-factor balancing test to determine a FOIA plaintiff's entitlement that considers: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992); *see also Negley v. FBI*, 818 F. Supp. 2d 69, 73 (D.D.C. 2011). As the D.C. Circuit has explained, "[e]ssentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational

---

[2]  Plaintiff further notes that the agency initially stated, in response to plaintiff's FOIA request, that "[p]ursuant to 5 U.S.C. 552(B)(7)(A)," the information plaintiff requested "is being exempted since disclosure could reasonably be expected to interfere with enforcement proceedings." Complaint, ¶ 6; Answer, ¶ 6. The agency abandoned that position subsequent to the initiation of the lawsuit.

purposes and those who seek documents for private advantage." *Davy*, 550 F.3d at 1160.  Here, consideration of the relevant factors clearly supports awarding plaintiff his attorneys' fees and costs.

### A.  The Public Derived a Significant Benefit From the Disclosure of the Requested Records

In determining whether the "public benefit" factor weighs in favor of granting a fee award, the court looks to whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995), citing *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).  The result here clearly meets that test.

Through this lawsuit plaintiff obtained never-before released information on a matter of great public interest that shed light on the government's conduct of a controversial criminal prosecution.  The public interest present here was amply borne out when plaintiff, and others, published articles detailing the contents of the disclosed records.  The public interest in the matter has also been recognized by the government; the Justice Department saw fit to issue a press release announcing its indictment of Aaron Swartz.  Department of Justice, *Alleged Hacker Charged with Stealing Over Four Million Documents from MIT Network* (July 19, 2011) (filed herewith as Exhibit G).  Such demonstrated public interest strongly weighs in favor of an award of attorneys' fees and costs.  *See*, *e.g.*, *Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225, 235 (D.D.C. 2012) (fees awarded where documents illuminating "prosecutorial decisionmaking" were disclosed, noting "the national media coverage garnered by this issue"); *CREW v. Dep't of Justice*, 820 F. Supp. 2d 39, 45-46 (D.D.C. 2011) (finding that public benefit factor weighed in favor of awarding fees where the "FOIA requests at issue . . . concern[ed] information related to a controversy of significant public import").

11

**B.       Plaintiff Derived No Commercial Benefit From the
Disclosures He Obtained From this Lawsuit, and Instead
Shares the Public Interest in the Contents of the Disclosed
Documents**

The "commercial benefit" and "plaintiff's interest" factors are closely related and

typically considered together.  *Tax Analysts*, 965 F.2d at 1095.  Plaintiff is a professional

journalist who sought the released records for the purpose of news reporting and public

dissemination.  Pursuit of information through FOIA for journalistic purposes is not deemed to

be for "commercial benefit."  *See*, *e.g.*, *Davy*, 550 F.3d at 1162 (no "commercial" motive where

requester's "purpose in filing the FOIA request and pursuing litigation was to increase the public

fund of knowledge about a matter of public concern");  *Campbell v. U.S. Dep't of Justice*, 164

F.3d 20, 35-36 (D.C. Cir. 1998) ("Congress did not intend for . . . journalists . . . to forego

compensation when acting within the scope of their professional roles").

Further, plaintiff has no commercial interest in the requested documents.  Plaintiff

disseminated the documents he acquired from his FOIA request on a website specifically created

for that purpose.[3]  As an individual who "gathers information of potential interest to a segment of

the public, uses [his] editorial skills to turn the raw materials into a distinct work, and distributes

that work to an audience," plaintiff is "among those whom Congress intended to be favorably

treated under FOIA's fee provisions." *Davy*, 550 F.3d at 1161-62, quoting *Tax Analysts*, 965

F.2d at 1095-96.  *See also CREW v. U.S. Dep't of Justice*, 820 F. Supp. 2d at 45.

Awarding plaintiff his attorney fees here would further the underlying purpose of the

FOIA's fee provision: "encourag[ing] Freedom of Information Act suits that benefit the public

interest."  *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980).

---

[3]  *See* https://www. swartzfiles.com

*See also Davy*, 550 F.3d at 1160-61 ("a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, [unless] . . . his interest was of a frivolous or purely commercial nature.")  (quotation marks omitted), quoting *Fenster*, 617 F.2d at 742 n.4; *CREW v. U.S. Dep't of Justice*, 820 F. Supp. 2d at 46.  Under these circumstances, plaintiff, as a journalist acting in the public interest, satisfies the second and third factors for a fee award.

C.    **The Agency's Denial of Plaintiff's FOIA**
          **Request Lacked a Reasonable Basis in Law**

The fourth entitlement factor "considers whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'"  *Davy*, 550 F.3d. at 1162 (citations omitted).  "The question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Id*. at 1163.  When measured against this standard, the Secret Service's position here clearly was unreasonable.

The agency's initial refusal to disclose the requested records – as set forth in its response to plaintiff dated February 26, 2013 – was premised upon its unequivocal assertion that "[p]ursuant to 5 U.S.C. 552(B)(7)(A)," the information plaintiff requested "is being exempted since disclosure could reasonably be expected to interfere with enforcement proceedings." Complaint, ¶6; Answer, ¶6.  By letter to the Secret Service dated March 1, 2013, plaintiff appealed the agency's initial determination to deny his request.  Complaint, ¶6; Answer, ¶6. Upon the agency's failure to respond to plaintiff's administrative appeal within the statutory time limit, plaintiff initiated this action on April 12, 2013.  The agency avers that it received

13

plaintiff's appeal on March 12, 2013, and responded to it by letter dated May 9, 2013.  Answer, ¶ 7.  Thus, by the agency's own reckoning, the statutory deadline for a response to plaintiff's appeal was April 9, 2013 – three days before plaintiff inititated this action.  5 U.S.C. § 552(a)(6)(A)(ii).  The agency did not respond to plaintiff's appeal – and abandon its reliance upon Exemption 7(A) – until almost a month after plaintiff filed suit.  This Court has recognized that such circumstances amply support a finding that the agency's position lacked a reasonable basis.  Thus, for instance, in *Judicial Watch*, 774 F. Supp. 2d at 231, where the agency "failed to provide a response . . . within twenty business days as required by [FOIA]," its  "initial failure to respond . . . weigh[ed] in favor of a fee award," citing *Davy*, 550 F.3d at 1166 (Tatel, J., concurring) (the reasonableness-of-withholding factor's purpose "will be ill-served if the government can prevail on this factor by saying nothing and forcing the requester to sue, only then to offer no resistance").  *See also Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011) ("It is insufficient for an agency simply to claim that it 'offered no resistance' and quickly responded to a FOIA request upon being subjected to suit.") (citation omitted).

Plaintiff submits that the Secret Service's initial claimed basis for withholding the requested records (Exemption 7(A)), and its failure to respond to plaintiff's administrative appeal within the statutory deadline, clearly lacked a "reasonable basis in law."[4]  As such, when that factor is balanced along with the public interest in disclosure and plaintiff's lack of a commercial interest, it is beyond serious dispute that plaintiff is entitled to an award of attorneys fees and costs.

---

[4]  Plaintiff further submits that the agency's withholding of information under Exemption 5 from 49 pages of responsive material – released earlier this year as a result of plaintiff's objections, *see* Exhibits B & C, filed herewith – also lacked a reasonable basis in law.

### III.      THE REQUESTED FEE AWARD IS REASONABLE

After determining a plaintiff's eligibility and entitlement to attorney's fees, the court

must determine "the proper amount of the fee award," *Summers v. Dep't of Justice*, 477 F. Supp.

2d 56, 63 (D.D.C. 2007).  Fee awards are calculated employing the "usual method of . . .

multiply[ing] the hours reasonably expended in the litigation by a reasonable hourly fee,

producing the lodestar amount." *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d

159, 175 (D.D.C. 2008) (internal quotation and citation omitted).

### A.      The Court Should Apply the Updated *Laffey* Matrix to Determine the Prevailing Market Rates for Legal Services

Plaintiff's attorney, as a public interest lawyer, does not have customary hourly billing

rates.  Declaration of David L. Sobel ("Sobel Decl.") (filed herewith as Exhibit H), ¶ 2.  In *Blum*

*v. Stenson*, 465 U.S. 886, 896 (1984), the Supreme Court held that public interest attorneys may

be awarded fees according to the prevailing market rates in the community.  *See also Act Now to*

*Stop War & End Racism Coalition v. District of Columbia*, 286 F.R.D. 145, 149 (D.D.C. 2012)

( "The appropriate hourly rate for public interest legal service organizations and for-profit firms

engaged in public interest work is the prevailing market rate."), quoting *Judicial Watch, Inc. v.*

*Dep't of Commerce*, 384 F. Supp. 2d 163, 170 (D.D.C. 2005).

To ascertain appropriate rates in this jurisdiction, "use of the broad *Laffey* matrix may be

by default the most accurate evidence of a reasonable hourly rate." *Northwest Coalition for*

*Alternatives to Pesticides v. EPA*, 421 F. Supp. 2d 123, 129 (D.D.C. 2006).[5]  "Attorneys who do

not charge a billing rate, such as those employed with non-profit or public interest groups, may

be compensated at the hourly market rates" reflected in the *Laffey* Matrix.  *Bolden v. J & R Inc.*,

---

[5] "The *Laffey* matrix is 'a schedule of charges based on [particular attorneys'] years of experience' developed in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)." *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d at 175.

135 F. Supp. 2d 177, 179 (D.D.C. 2001); *see also Judicial Watch v. U.S. Dep't of Justice*, 774 F.

Supp. 2d at 232 ("For public-interest . . . lawyers who do not have customary billing rates, courts

in this circuit have frequently employed the '*Laffey* Matrix.'").

Since at least 2000, this Court has approved the use of a version of the *Laffey* matrix

updated through the application of the legal services component of the Consumer Price Index

("CPI") to bring rates from earlier years in line with current economic realities.  *See Salazar v.*

*District of Columbia ("Salazar I")*, 123 F. Supp. 2d 8, 11-15 (D.D.C. 2000).  While the U.S.

Attorney's Office for the District of Columbia maintains its own version of the fee matrix, this

Court reiterated in 2011 that it "still believes that use of the National Legal Services CPI 'has the

distinct advantage of capturing the more relevant data because it is based on the legal services

component of the Consumer Price Index rather than the general CPI on which the U.S.

Attorney's Office matrix is based.'"  *Salazar v. District of Columbia ("Salazar II")*, 750 F. Supp.

2d 70, 73 (D.D.C. 2011), quoting *Salazar I*, 123 F. Supp. 2d at 14-15.  *See also Smith v. District*

*of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) ("The Court concludes that the use of the

updated *Laffey* Matrix is reasonable and consistent with previous precedent from our Court of

Appeals, as well as from this Court in *Salazar [I]*."); *Interfaith Cmty. Org. v. Honeywell Int'l,*

*Inc.*, 726 F.3d 403, 414-416 (3d Cir. 2013) (affirming district court's "use of the LSI-updated

*Laffey* Matrix to determine the prevailing rates in the Washington, D.C. market.").

Less than two years ago, in *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C.

2013), the Court conducted a lengthy and detailed analysis of the appropriate methodology with

which to determine "prevailing market rates" for attorney fee awards.  After surveying relevant

data from a variety of sources, and considering some judicial critiques of the Legal Services

Index ("LSI") component of the CPI as a means of determining market rates, the Court

concluded that "the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide" than the matrix maintained by the U.S. Attorney's office.  *Id.* at 154 (emphasis in original).  The Court thus held that "the LSI-adjusted rates are an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area."  *Id.* at 156.

In January 2014, the Court addressed the issue again in the *Salazar* litigation, noting that it had previously ruled on several occasions that "the methodology under which the *Laffey* rates should be updated is properly measured by the Legal Services Index ("LSI") of the Nationwide Consumer Price Index ("CPI"), rather than by the All-Items CPI for the Washington, D.C. area" (as the USAO matrix is calculated).  *Salazar v. District of Columbia* (*"Salazar III"*), 991 F. Supp. 2d 39, 47 (D.D.C. 2014).  The Court reiterated that it "remains convinced that this methodology is appropriate."  *Id.*  In so doing, the Court noted that "[i]n an extremely thorough and well-researched opinion issued recently [in *Eley*] . . . this Court cited data further supporting this conclusion."  *Id.*  As the Court noted in its 2014 *Salazar* opinion, the extensive analysis in *Eley*

> point[ed] out that, "considering that Washington, D.C. is among the most expensive legal services markets in the country, . . . it would appear that the use of a nationwide legal service index is, if anything, likely to underestimate the costs of local legal services because such a rate is an average of all costs nationwide. In short, the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide."

*Salazar III*, 991 F. Supp. 2d at 48, quoting *Eley*, 999 F. Supp. 2d at 154 (emphasis in original; other citation omitted).

More recently, in an opinion issued in October 2014, the Court again reiterated the propriety of the LSI methodology, citing the "thoughtful and thorough opinion" in *Eley*.  *Citizens*

*for Ethics and Responsibility in Washington v. Dep't of Justice ("CREW I")*, 2014 U.S. Dist. LEXIS 182097 (D.D.C. Oct. 24, 2014).  The Court held that the LSI-derived rates were appropriate in the FOIA case before it, finding that the "LSI Matrix stands on sound methodological footing, that it is appropriate in a case of this complexity, and that it captures the relevant rates regardless of the size or nature of the entity seeking fees."  *Id*. at *25.

Most recently, in February 2015, the Court again adopted the LSI-derived rates as the most accurate measure of attorney fees in the DC market, noting that it was "persuaded by Judge Howell's analysis of the issue [and adoption of the LSI methodology] in *Eley*."  *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice ("CREW II")*, 2015 U.S. Dist. LEXIS 16324, *5-6  (D.D.C. Feb. 11, 2015) (*appeal pending*).

> As Judge Howell observed [in *Eley*], the CPI-[Washington-Baltimore] measures inflation of "such diverse items as personal computer prices, funeral expenses and movie tickets" and therefore "heavily masks the changes in rates for legal services."  Moreover, the legal services component of the CPI itself "shows that the cost of legal services nationally has far outstripped the increase in overall prices."  Considering that Washington, D.C. is the third most expensive legal market in the country, the Court agrees with Judge Howell that the LSI-adjusted *Laffey* matrix – even if it does not capture the precise types of litigation services involved in this [FOIA] case – likely offers a better approximation of D.C. rates for the relevant services than a matrix adjusted using a general inflation index.

*Id*. at *6 (citations omitted).

Plaintiff here relies upon a recently updated *Laffey* matrix calculated by Dr. Michael Kavanaugh, the expert economist whose analytical method the Court adopted in *Salazar I – III*, *Eley* and the *CREW* decisions.  *See*, *e.g.*, *Salazar II*, 750 F. Supp. 2d at 73 ("Dr. Kavanaugh's explanation makes good sense …"); *Eley*, 999 F. Supp. 2d at 150 (court relied upon updated *Laffey* matrix "'developed by an expert economist,'" Michael Kavanaugh, Ph.D.").  As Dr. Kavanaugh explains in his declaration, his most recent calculations of prevailing market rates for legal services in the Washington, DC area are based upon the same methodology he employed,

and the Court adopted, in *Salazar I*.  Declaration of Michael Kavanaugh ("Kavanaugh Decl.")

(filed herewith as Exhibit I) ¶ 12.  Based upon that methodology, Dr. Kavanaugh has calculated

that the prevailing market rates for work performed by attorneys with more than 20 years of

experience (like Mr. Sobel)[6] were $753/hour between June 2012 and May 2013, and $771/hour

between June 2013 and May 2014.  *Id.*, Attachment 3 ("Adjusted *Laffey* Matrix").  A more

recent update of the matrix, using the LSI methodology, calculates the applicable rates as

$789/hour between June 2014 and May 2015, and $796/hour between June 2015 and May 2016.

Exhibit J, filed herewith.[7]

### B.    The Legal Work For Which Plaintiff Seeks Compensation is Well-Documented and the Time is Reasonable

While a fee applicant "has the burden of establishing the reasonableness of its fee

request," that burden is met when supporting documentation is "of sufficient detail and probative

value to enable the court to determine with a high degree of certainty that such hours were

actually and reasonably expended," *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970

(D.C. Cir. 2004) (citations and internal quotation marks omitted); *see also American Petroleum*

*Inst. v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996) ("petitioner must submit 'sufficiently detailed

information about the hours logged and the work done'") (citation omitted).  As this Court

---

[6]  Mr. Sobel was admitted to the bar in May 1980.  Sobel Decl.,  ¶ 2.

[7]  As the D.C. Circuit held in *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995), "[t]o supplement any matrix that has been offered, plaintiffs may also provide . . . evidence of recent fees awarded by the courts . . . to attorneys with comparable qualifications handling similar cases."  Here, plaintiff's counsel, Mr. Sobel, was recently awarded fees based upon LSI-derived rates for FOIA litigation in *CREW I* and *CREW II*.  Judge Cooper, in *CREW II*, reduced the LSI-adjusted rate by 15 percent "to account for the differences between reported rates and actual law firm billing realization," 2015 U.S. Dist. LEXIS 16324 at *11.  In light of the Court's conclusion in *Eley*, following its detailed and comprehensive analysis of the relevant data, that "the LSI-adjusted matrix is probably a *conservative* estimate" of applicable market rates, plaintiff respectfully disagrees with Judge Cooper's conclusion that a 15 percent reduction of the LSI-derived rates was appropriate.

recognizes, "the ultimate inquiry is whether the total time claimed is reasonable" and a claimant is thus required to provide "sufficient detail . . . so that [the court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith*, 466 F. Supp. 2d at 158.

Here, plaintiff is submitting in support of his request a declaration detailing the number of hours counsel devoted to discrete tasks performed at specific stages of the litigation, based upon counsel's records. *See, e.g.,* Sobel Decl., ¶ 4 & attached list of hours (describing work as "Review DHS status report & answer;" "Review agency counsel's memo & disclosed documents;" etc.). Such detail distinguishes plaintiff's documentation from the kind of "generic entries" the D.C. Circuit has admonished fee applicants to avoid. *Role Models*, 353 F.3d at 971 (finding inadequate "numerous entries in which attorneys billed simply for 'research' and 'writing'"). Given the relatively small number of hours for which plaintiff seeks compensation, the amount of detail provided is clearly adequate to enable the Court to "evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith*, 466 F. Supp. 2d at 158.

Mr. Sobel has been an active member of the bar and has practiced law since May 1980. Sobel Decl., ¶ 2. He has extensive experience litigating FOIA cases in the federal courts and has been recognized as a leading expert in the field. Sobel Decl. ¶¶ 2 & 3; *see also CREW II*, 2015 U.S. Dist. LEXIS 16324 at *10 ("It is uncontested that [Mr. Sobel is an] experienced, national expert[] in FOIA litigation."). As an attorney with over 30 years of experience, Mr. Sobel is entitled to compensation at an hourly rate of $753 for work performed from June 2012 through May 2013; $771 from June 2013 through May 2014; $789 between June 2014 and May 2015;

and $796/hour between June 2015 and May 2016.  *See* Kavanaugh Decl., Attachment 3

(Adjusted *Laffey* Matrix) & Exhibit J.

　　Applying those rates to the hours detailed in the declaration of counsel, plaintiff is

entitled to an award of attorney's fees based upon a lodestar amount of $21,407 as follows:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| David L. Sobel | 4.5 | 753 | $3,388 |
| | 7.1 | 771 | $5,474 |
| | 15.9 | 789 | $12,545 |
| **Total Lodestar - Merits** | | | **$21,407** |

　　In addition, plaintiff seeks compensation for time devoted to the preparation of this

motion, *see* Sobel Decl., ¶ 5, in the amount of $7,164, as follows:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| David L. Sobel | 9.0 | 796 | $7,164 |
| **Total Lodestar - Fees** | | | **$7,164** |

　　As detailed above, plaintiff seeks a total award of attorney's fees in the amount of

$28,571 for time reasonably expended by counsel in pursuing the merits of this case and in the

preparation of this motion.[8]  In addition, plaintiff seeks reimbursement of costs reasonably

incurred in the amount of $350, for the filing fee plaintiff paid to the Court upon the initiation of

this action.  Sobel Decl., ¶ 6.

---

[8]  Plaintiff intends to supplement his request for attorney's fees to account for additional time
spent in the preparation of his reply in support of this motion.  Sobel Decl., ¶ 5.

## Conclusion

For the foregoing reasons, the Court should grant this motion and order defendant DHS to pay plaintiff attorney's fees in the amount of $28,571 and costs in the amount of $350, for a total of $28,921.


Dated:  July 24, 2015                                   Respectfully submitted,


                                                          */s/ David L. Sobel*
                                                        DAVID L. SOBEL
                                                        D.C. Bar No. 360418
                                                        5335 Wisconsin Ave., N.W., Suite 640
                                                        Washington, DC 20015
                                                        (202) 246-6180

                                                        Counsel for Plaintiff


22