## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN POULSEN,<br><br>        Plaintiff<br><br>    v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY,<br><br>        Defendant | Civil Action No. 13-498 (CKK) |

## MEMORANDUM OPINION
(March 21, 2016)

Plaintiff Kevin Poulsen, a journalist, brought this action against the Department of Homeland Security under the Freedom of Information Act ("FOIA"), seeking records from the United States Secret Service, a component of the Department of Homeland Security, regarding Aaron Swartz. Swartz was an Internet activist who was investigated and prosecuted by the Federal government and who took his own life on January 11, 2013. Before the Court is Plaintiff's [57] Motion for an Award of Attorney's Fees and Costs. Because the parties have resolved their substantive disputes over the materials requested and produced through a Court-supervised process, the request for fees and costs is the only issue remaining in the case. With respect to the pending request, Defendant contests both Plaintiff's eligibility for fees and entitlement to receive fees, as well as the reasonableness of the fees requested. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Mot. for an Award of Attorney's Fees and Costs ("Pl.'s Mot."), ECF No 57;
- Def.'s Mem. of Law in Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), ECF No. 62; and
- Pl.'s Reply Mem. in Supp. of Pl.'s Mot. ("Pl.'s Reply"), ECF No. 63.

The Court has also considered the supplemental memoranda and notices filed by the parties. *See* ECF Nos. 59, 64-66. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

motion, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [57] Motion for an

Award of Attorney's Fees and Costs. The Court concludes that Plaintiff is both eligible for and

entitled to receive fees, but that the amount of fees requested is not reasonable given the tasks

involved in this case. Therefore, the Court GRANTS Plaintiff's request as to $22,588.50 in fees

and $350 in costs and awards those amounts; the Court otherwise DENIES Plaintiff's request.

This case is dismissed in its entirety.

## I. BACKGROUND

Given the issues presented in the pending motion, the Court reserves presentation of the

relevant background for the issues discussed below.

## II. LEGAL STANDARD

Pursuant to 5 U.S.C. § 552(a)(4)(E)(i), the court may award reasonable attorney fees and

other litigation costs reasonably incurred by a plaintiff who substantially prevails in an action

against the government for the fulfillment of a FOIA request. In this Circuit, the attorney-fee

inquiry is divided into two prongs, the fee "eligibility" and the fee "entitlement" prongs. *Brayton*

*v. Office of the United States Trade Representative,* 641 F.3d 521, 524 (D.C. Cir. 2011). Under

the eligibility prong, the Court must determine whether a plaintiff has substantially prevailed

and, as a result, *may* receive attorney fees. *Id.* A plaintiff has substantially prevailed upon

obtaining relief either through a judicial order, enforceable written agreement, consent decree or,

alternatively, through a voluntary or unilateral change in position by the agency, if the plaintiff's

claim is not insubstantial. 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II).

If the eligibility prong is satisfied, the Court next considers the entitlement prong to

determine whether a plaintiff *should* receive fees. *Brayton,* 641 F.3d at 524. Under the

entitlement prong, the Court must weigh four factors: " '(1) the public benefit derived from the

case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding.' " *Judicial Watch, Inc. v. FBI,* 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. United States Dep't of Justice,* 965 F.2d 1092, 1093 (D.C. Cir. 1992)). While no one factor is dispositive, *Davy v. CIA,* 550 F.3d 1155, 1159 (D.C. Cir. 2008), "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion ...," *Tax Analysts,* 965 F.2d at 1094.

Finally, if the Court concludes that a plaintiff is eligible for and entitled to fees, the Court considers the reasonableness of the fees requested. *See* 5 U.S.C. § 552(a)(4)(E)(i) (plaintiff who substantially prevails may be awarded "reasonable attorney fees and other litigation costs").

## III. DISCUSSION

Plaintiff claims that (1) he is eligible for fees, (2) he is entitled to fees, and (3) he has requested reasonable fees. Defendant disagrees on all three fronts. The Court, therefore, considers each aspect of the relevant inquiry in turn.

## A. Eligibility for Fees

A plaintiff has substantially prevailed upon obtaining relief either through a judicial order, enforceable written agreement, consent decree or, alternatively, through a voluntary or unilateral change in position by the agency, if the plaintiff's claim is not insubstantial. 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II). Plaintiff argues that he substantially prevailed because he obtained numerous documents in this case as a result of the many orders issued by the Court over the course of this litigation. The Court agrees.

At the time Plaintiff initiated this action, the agency had denied his FOIA request in whole. The agency relied on exemption 7(A), which exempts from disclosures "records or information compiled for law enforcement purposes … to the extent that the production of such

law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Although the agency later withdrew reliance on that exemption, it had not done so before Plaintiff had timely filed this action.

The Court pauses to address the argument that the agency makes in passing that Plaintiff did not exhaust his administrative remedies. Defendant's suggestion that Plaintiff had not timely exhausted his administrative remedies is at odds with the underlying timeline of events, as well as with Defendant's failure to assert an exhaustion defense either in its Answer, *see* ECF No. 27, or at any other point in this litigation. Specifically, Plaintiff filed his administrative appeal on March 1, 2013, and it was received by the agency on March 12, 2013. Plaintiff filed this action on April 12, 2013, which is more than 20 business days after it was received by the agency, during which he had received no response from the agency. Accordingly, Plaintiff has exhausted his administrative remedies. *See* 5 U.S.C. § 552(a)(6)(ii) (agency shall "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal"). It is immaterial that the appeal was not "logged" by the Secret Service's FOIA appeals component until April 17, 2013. Answer ¶ 7. The fact that the agency seems to have misplaced Plaintiff's appeal for almost a month does not mean that Plaintiff has failed to exhaust his administrative remedies. Nor is it material that the agency responded to Plaintiff's appeal within 20 working days after *locating* the appeal when that response was issued almost two months after the appeal was initially received by the agency. The consequences of the agency's mistakes fall on the government, not on Plaintiff.

Because the agency had not withdrawn reliance on exemption 7(A) prior to Plaintiff's filing the complaint, the agency may not argue that Plaintiff would have achieved the same result absent this litigation; there is no telling what would have happened had the agency timely

responded to Plaintiff's administrative appeal, abandoned reliance on exemption 7(A) immediately, and started producing records at that time. But the agency did not do so in this case, and the Court need not consider that possibility any further.

Once this litigation had commenced, the Court issued numerous orders supervising the search, review, and production of responsive documents to Plaintiff. *See* Minute Orders dated July 5, 2013; July 18, 2013; July 24, 2013; August 7, 2013; August 29, 2013; January 7, 2014; November 20, 2014; December 8, 2014; January 21, 2015; March 12, 2015; and April 13, 2015. Indeed, contrary to Defendant's suggestion, the Court's involvement began prior to the time that Massachusetts Institute of Technology ("MIT") and JSTOR sought to intervene in these proceedings. *See* Minute Orders issued July 5, 2013, and July 18, 2013 (further details in the margin).[2] It is important that Defendant did not produce any documents until Plaintiff filed his Complaint. *See Electronic Privacy Information Ctr. v. F.B.I.*, 72 F. Supp. 3d 338, 345 (D.D.C. 2014) (fees warranted where no documents produced until after filing of complaint). Moreover, the Court concludes that the productions would have been, at a minimum, less prompt and potentially less inclusive had they not occurred under the supervision of this Court during the pendency of this litigation. *See Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005) (more prompt receipt of documents supports eligibility for fees). Altogether this history is sufficient for

---

[2] *Compare* Minute Order issued July 5, 2013 ("By no later than AUGUST 5, 2013, Defendant shall file an Answer or other responsive pleading. Further, on or before that same date, AUGUST 5, 2013, Defendant shall file a proposed schedule for further proceedings … To the extent Defendant has not already done so, Defendant shall promptly release to Plaintiff all responsive documents that it has gathered thus far and shall continue to produce additional responsive documents that it locates on a rolling basis.") *with* Minute Order issued July 18, 2013 ("Based upon an off-the-record conference call … the Court understands that MIT intends to file a motion to intervene later today… the Court hereby STAYS the obligation of the Government to promptly release to Plaintiff all responsive documents that it has located on a rolling basis … until further order of the Court.").

the Court to conclude that Plaintiff substantially prevailed in this litigation because Plaintiff

obtained relief through multiple enforceable orders of this Court. *See* 5 U.S.C.

§ 552(a)(4)(E)(ii)(I). Alternatively, the Court would also conclude that, insofar as Plaintiff

received relief in part because of voluntary changes in the agency's position, Plaintiff

substantially prevailed because Plaintiff's claim is not insubstantial. *Id.* § 552(a)(4)(E)(ii)(II). For

both of those reasons, Plaintiff is eligible for fees.

## B.  Entitlement to Fees

To determine whether Plaintiff is *entitled* to attorney fees, the Court must weigh four

factors: " '(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff;

(3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's

withholding.' " *Judicial Watch,* 522 F.3d at 371 (quoting *Tax Analysts,* 965 F.2d at 1093). At the

outset, the Court notes that Defendant concedes that Plaintiff satisfies the second and third

requirements. Def.'s Opp'n at 12. Indeed, those factors present a low hurdle for a journalist such

as Plaintiff who sought to gather materials for public distribution and to serve as the basis for

publicly-available journalism. *Davy*, 550 F.3d at 1162. Therefore, the Court concludes that

Plaintiff has satisfied these two factors and focuses its analysis on the parties' disputes regarding

the first factor (the public benefit) and the fourth factor (the reasonableness of the agency's

position).

### 1.  Public Benefit

The Court agrees with Plaintiff that he has shown that there was a public benefit to the

disclosures. The underlying matter was one of substantial public interest. *See, e.g.*, Pl.'s Reply,

Ex. A; *see also, e.g.,* John Schwartz, *M.I.T. Cleared in Report after Suicide of Activist*, N.Y.

TIMES, July 30, 2013, *available at* http://www.nytimes.com/2013/07/31/us/mit-releases-report-

on-its-role-in-the-case-of-aaron-swartz.html  (last visited Mar. 20, 2016); Larissa MacFarquhar,

*Requiem for a Dream*, THE NEW YORKER, March 11, 2013, available at

http://www.newyorker.com/magazine/2013/03/11/requiem-for-a-dream (last visited Mar. 20,

2016). Plaintiff received extensive material as a result of this litigation regarding his FOIA

request. Finally, Plaintiff published articles based on the materials that he received through this

FOIA litigation and posted significant materials directly online for public consumption. *See, e.g.*,

Pl.'s Mot., Exs. D, E, F. Accordingly, the Court concludes that Plaintiff has satisfied the public

benefit prong of the entitlement inquiry. *See Citizens for Responsibility & Ethics in Washington*

*v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (recognizing "public interest in the

manner in which the DOJ carries out substantive law enforcement policy").

### 2.  Reasonableness of Agency's Withholding

"The fourth factor considers whether the agency's opposition to disclosure 'had a

reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a

valid claim or otherwise engaged in obdurate behavior.' " *Davy*, 550 F.3d at 1162 (citations

omitted). Plaintiff relies on both of these prongs, arguing that the agency's reliance on exemption

7(A) was unreasonable and that its response during the course of this litigation amounted to

recalcitrance. Defendant argues that the agency's withholding was reasonable and that its actions

demonstrated no recalcitrance or obduracy. The Court begins with the first prong of this inquiry.

"The question is not whether [the requester] has affirmatively shown that the agency was

unreasonable, but rather whether the agency has shown that it had any colorable or reasonable

basis for not disclosing the material until after [Plaintiff] filed suit." *Id.* at 1163. On this record,

the Court concludes that Defendant has not shown that it had a reasonable or colorable basis in

law for relying on exemption 7(A).

Defendant argues that its reliance on exemption 7(A) was reasonable because the agency *believed* that an enforcement action was ongoing at the time it responded to Plaintiff's FOIA request. See Def.'s Opp'n at 13. Elsewhere Defendant states baldly that an enforcement action was ongoing at that time without providing a factual basis for that statement. *See id.* at 10. However, Defendant has not *shown* that the enforcement action itself was ongoing. In the letter dated February 26, 2013, the agency responded to Plaintiff's FOIA request by stating that "your file is being exempted since disclosure could reasonably be expected to interfere with enforcement proceedings." Def.'s Opp'n, Ex. B, at 1. On March 1, 2013, Plaintiff sent a letter filing an administrative appeal of the FOIA denial; that letter was received on March 12, 2013. *See* Answer, ECF No. 27, ¶ 7. Having received no response to the appeal, Plaintiff filed this action on April 12, 2013. *See* Compl., ECF No. 1. Subsequently, while this litigation was pending, Defendant responded to Plaintiff's appeal by a letter dated May 9, 2013, informing Plaintiff that the agency's initial decision to rely on exemption 7(A) was being reversed and that the agency would begin processing his request. *See* Def.'s Opp'n, Ex. D ("Under my direction, a further review of this matter was conducted. As a result, it has been determined that exemption (b)(7)(A) is no longer applicable to all of the information which you have requested.").

It is important to note that the agency provides the Court no additional information regarding the timeline or termination of the investigation and that the agency in no way shows that the reliance on the exemption was proper at the time of the denial of the request. It is not enough for the government to state baldly that "the agency believed that its investigation regarding Swartz remained open," Def.'s Opp'n at 13, or that "[w]hen the Secret Service relied on Exemption 7(A), it had an open investigation that encompassed Aaron Swartz," *id.* at 10. The agency states that its argument is based on a "changes in the factual basis" for the reliance on

exemption 7(A). However, Defendant has not provided any factual support for the bald statements in Defendant's Opposition, through declarations, documents, or otherwise. Notably, the agency never even indicates when the investigation began or ended, even in its briefing, such that the Court could conclude that the reliance on exemption 7(A) was proper at the time the agency issued its denial letter. In short, to prevail with respect to its argument the denial was reasonable, the agency must show that the reliance on exemption 7(A) was proper at the time the request was denied. However, the agency has not done so through the material submitted to the Court. Furthermore, it is immaterial that the agency had recanted in its May 9, 2013, letter resolving Plaintiff's administrative appeal; by that time, Plaintiff had commenced this litigation given that Plaintiff did not receive a timely response to his appeal. To be sure, had the agency responded to the appeal within the statutory timeframe, it is possible that the agency could have avoided this litigation. But there is no need to belabor what the results *might* have been if the agency had responded to Plaintiff's administrative appeal in a timely fashion. The agency never withdrew its reliance on exemption 7(A) before Plaintiff timely filed suit. In sum, the agency has not shown that its denial of Plaintiff's request was reasonable.

In addition, the Court notes that, in the course of the underlying proceedings, Defendant seems to have first lost track of Plaintiff's administrative appeal and then lost track of the deadline for responding to the Complaint in this action. Plaintiff also emphasizes the multiple extensions that Defendant requested with respect to the filing of its Answer, which were a prelude to the agency beginning to participate in this litigation in earnest. The Court agrees with Plaintiff that this matter would likely have proceeded more efficiently had the government not engaged in these mistakes and delays, but the Court need not delve any further into the timeline of this case. The Court concludes that, because Plaintiff has not shown that the reliance on

exemption 7(A) was reasonable at the time of the response and of Plaintiff's timely suit, the reasonableness prong weighs in Plaintiff's favor.

In sum, because the Court finds that all four factors of the entitlement inquiry weigh in Plaintiff's favor, the Court concludes that Plaintiff is entitled to fees and costs in this action.

## C.  Reasonableness of Fees Requested

The Court now turns to the reasonableness of the fees Plaintiff has requested. Plaintiff requests $37,723 in fees and $350 in costs. This request includes $9,152 in fees that were not originally requested in Plaintiff's motion and account for the filing of a supplemental memorandum requested by the Court and the preparation of Plaintiff's reply in support of the fees' motion. The parties' primary dispute as to this portion of the inquiry is regarding the applicable hourly rate. That is, Defendant does not make any serious argument that the *number of hours* for which Plaintiff has requested fees is excessive; Defendant simply argues that the *hourly rates* that Plaintiff requests are too high. The Court also notes that Defendant does not dispute Plaintiff's counsel's level of experience; both parties place him in the category of 20 or more years of experience. In specific, Plaintiff seeks fees pursuant to the hourly rate scale calculated via the Legal Services Index ("LSI") update to the United States Attorney's *Laffey* matrix. Defendant argues that, even if fees are warranted, they should only be assessed at the rate of the traditional *Laffey* matrix updated for inflation pursuant to the Consumer Price Index for the Washington, D.C., area. Defendant also argues that the Court should reduce the fees Plaintiff has requested by 75%, which Defendant states would result in an award of approximately $7,142 (exclusive of fees for Plaintiff's reply).

The following chart presents Plaintiff's requested fees, using the LSI scale, and the result if the traditional *Laffey* scale is used:[3]

|  | Hours | LSI Rate ($/hour) | LSI Total | Traditional *Laffey* Rate ($/hour) | Traditional *Laffey* Total |
|---|---|---|---|---|---|
| June 2012 – May 2013 | 4.5 | 753 | $3,388.50 | 505 | $2,272.50 |
| June 2013 – May 2014 | 7.1 | 771 | $5,474.10 | 510 | $3,621 |
| June 2014 – May 2015 | 15.9 | 789 | $12,545.10 | 520 | $8,268 |
| June 2015 – May 2016 | 9.0 | 796 | $7,164 | 530 | $4,770 |
| Supp. Mem. (Aug. 2015) | 4.7 | 789 | $3,708.30 | 530 | $2,491 |
| Reply (Oct. 2015) | 6.9 | 789 | $5,444.10 | 530 | $3,657 |
| TOTALS | 48.1 |  | $37,724.10 |  | $25,079.50 |

Each of the competing matrices relied on by the parties updates the original *Laffey* matrix for inflation, albeit by different methodologies. The methodology traditionally used by the U.S. Attorney's office for Washington, D.C., updates the original *Laffey* matrix by the Consumer Price Index for all Urban Consumers that is calculated for the Washington, D.C., area by the United States Bureau of Labor Statistics. *Eley v. D.C.*, 793 F.3d 97, 101 (D.C. Cir. 2015). By contrast, the LSI update to the *Laffey* matrix is based on the national rate of inflation within the legal services sector. *Id.* at 102.

The parties' arguments regarding the two competing matrices focus primarily on the general appropriateness of the methodologies undergirding those matrices for calculating

---

[3] Any minor discrepancies from the overall request by Plaintiff result from differences in rounding. In addition, it unclear why Plaintiff used what appears to be the LSI rate for 2014-2015 for the hours spent on his reply and supplemental memorandum, which occurred after June 2015. But the Court sees no reason to use the higher figure for 2015-2016 in analyzing Plaintiff's request as Plaintiff has not requested that rate.

reasonable attorneys' fees. Specifically, they dispute which measure of inflation is better able to update the U.S. Attorney's original *Laffey* matrix to fit contemporary conditions in the legal market within Washington, D.C. However, the Court need address the general appropriateness of competing methods of calculating inflation—that task is best left for another day—because the Court concludes that Plaintiff has not shown that the LSI rates are appropriate for the tasks involved in *this specific case*. While it may be true that the FOIA litigation generally falls into the category of complex Federal litigation, the Court concludes that Plaintiff has not shown that the particular tasks involved in this FOIA case are "as complex as the type of litigation that supports the 'enhanced' hourly rates in the LSI *Laffey* Matrix." *Eley*, 793 F.3d at 105. This case did not involve creation of a *Vaughn* index or briefing of dispositive motions. As the Court is well aware, based on its role throughout the prosecution of this case, Plaintiff's counsel's role was more focused on coordination with opposing counsel, preparation and submission of Joint Status Reports to the Court, monitoring of ongoing production, and negotiations regarding the applicability of certain exemptions that the agency applied. The Court does not minimize the importance of these tasks, either in this case or in general. Yet, the Court cannot conclude based on the record submitted that the tasks required of Plaintiff's counsel, as a whole, are the types of tasks that merit rates enhanced beyond the *Laffey* rate scheme produced by the U.S. Attorney's office. Accordingly, the Court will award no more than the *Laffey* rates enumerated above.

Before proceeding to the question of whether Plaintiff's attorney's fees should be reduced any further, as requested by Defendant, the Court addresses briefly the additional fees requested in Plaintiff's Reply. Plaintiff requests fees, included in the chart above, for 4.7 hours for the preparation of a memorandum supplementing the original request for fees and for 6.9 hours for the preparation of the Reply. With respect to the Reply, the Court agrees with Plaintiff that fees are warranted for that task. However, with respect to the supplemental memorandum, the Court

concludes that fees are not warranted, and therefore the Court eliminates that line item. In Plaintiff's motion for fees submitted on July 24, 2015, Plaintiff relied significantly on the district court's decision in *Eley v. D.C.*, 999 F. Supp. 2d 137 (D.D.C. 2013). Plaintiff never mentioned in his motion that, *prior* to the submission of his motion, the District of Columbia Circuit Court of Appeals had issued its opinion in *Eley*, 793 F.3d at 97, which vacated the district court's decision and remanded for further proceedings.[4] Upon receiving Plaintiff's motion, the Court concluded that it was necessary that "Plaintiffs file a supplement discussing the import of [the Court of Appeals' decision in *Eley*] with respect to their request prior to the filing of a response from Defendants" in order "[t]o facilitate efficient briefing and resolution of the issue before the Court." Minute Order issued July 27, 2015. Plaintiff complied with that Minute Order, filing a supplemental brief arguing that *Eley* is distinguishable from the case at hand and providing additional support for Plaintiff's argument that the LSI rates are appropriate for this case. Because that briefing was necessitated by Plaintiff's failure to note, in his initial brief, that the district court's *Eley* decision may have been significantly undermined by the Court of Appeals' decision, which had been issued two weeks prior to Plaintiff's motion for fees, the Court concludes that fees for the preparation of the supplement are not warranted. As Plaintiff requested fees for a total of 4.7 hours for this task, the Court will subtract those fees from the total to be awarded. Pursuant to the *Laffey* rate applicable for Plaintiff's counsel's level of experience for that year, $530/hour, this set of hours would result in compensation of $2,491. Accordingly, the Court will not award fees for that line item and subtracts this amount from the total requested by Plaintiff. In sum, pursuant to the *Laffey* rates listed above and the number of

---

[4] It is of no moment that the issuance of the mandate of the Court of Appeals in *Eley* had been stayed as of the filing of Plaintiff's motion for fees.

hours for which fees are warranted, the Court concludes that an award of no more than $22,588.50 in fees is appropriate.

Finally, the Court turns to Defendant's remaining argument that the amount of fees that Plaintiff requested should be reduced by 75% in light of what it argues is the reasonableness of the agency's position and the excessiveness of the rates Plaintiff requests. The Court notes that Defendant proposed applying this 75% reduction to the total fees requested by Plaintiff, which were calculated pursuant to the LSI scale. The Court, however, determines that a further reduction is not warranted. The Court has considered the parties' arguments regarding reasonableness above and has concluded that the agency has not shown that its withholding was reasonable. In addition, the Court has *accepted* Defendant's argument that the use of the traditional update to the *Laffey* matrix, rather than the enhanced LSI update to the *Laffey* matrix, is appropriate in these circumstances. The Court notes as well that, based on the analysis above, the Court has already effectively reduced Plaintiff's requested fee by approximately 40%. The Court finds no reason in the record before it or in assessing the entire conduct of this litigation to further reduce the fees awarded, and the Court will not do so.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [57] Motion for an Award of Attorney's Fees and Costs. The Court GRANTS Plaintiff's request as to $22,588.50 in fees and $350 in costs and AWARDS those amounts; the Court otherwise DENIES Plaintiff's request. As there are no other issues to resolve in this case,

this case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 21, 2016

                                        /s/
                                COLLEEN KOLLAR-KOTELLY
                                United States District Judge